FILED
MAR 23 2012
CLERK

UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

| | | |
|---|---|---|
| TERRY BURKE as Personal Representative of the ESTATE OF BERNIECE HERMSEN, and in his capacity as previous attorney in fact for Berniece Hermsen, | ) ) ) ) ) ) | File No. Civ. _____ |
| Plaintiff, | ) ) | COMPLAINT |
| v. | ) ) | |
| Ability Insurance Company, f/k/a Medico Life Insurance Company, Ability Resources, Inc.; Ability Resources Holdings, Inc.; Ability Reinsurance Holdings Limited, Bermuda; Ability Reinsurance Limited, Bermuda. | ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

COMES NOW the plaintiff, by and through his attorney Mike Abourezk, and hereby states as follows:

**PRELIMINARY STATEMENT**

1.  Plaintiff, Terry Burke is a resident of Bonesteel, South Dakota, and is the Personal Representative of the Estate of his aunt, Berniece Hermsen, who is deceased.

2.  The defendants are companies located and with their primary place of business outside the state of South Dakota.

1

3. The amount in controversy exceeds $75,000.

**NATURE OF THE CASE**

4. The defendants are an association of entities acting together for the purpose of providing long term care insurance, and also act as the alter egos and/or agents of each other.

5. Berniece Hermsen purchased a policy of long term care insurance from Mutual Protective Insurance Company, on January 18, 2000.

6. Mutual Protective Insurance Company later changed its name to Medico Life Insurance Company.

7. Ability Resources, Inc. purchased 100% of the stock in Medico Life Insurance Company on September 29, 2007, including the block of insurance policies in which Plaintiff's policy was included.

8. The name of Medico Life Insurance Company was later changed to Ability Insurance Company.

9. The policy sold to Berniece Hermsen is a Form 698. It allows for a maximum daily benefit of $100.00 for each day of covered care.

10. The "covered care" included assisted living care.

11. The policy provides that to be eligible for benefits, the claimant must satisfy only one of three benefit qualifiers:

    (1) **Medical Necessity**: You must require covered care due to sickness

or injury. The care prescribed must be consistent with accepted medical standards for treating the diagnosed condition and could not have been omitted without adversely affecting your condition.

(2) **Loss of Functional Capacity**: You need active personal assistance to perform at least two of the six defined Activities of Daily Living.

(3) **Cognitive Impairment**: You require supervision and direction because of cognitive impairment.

12. At 87 years of age, Berniece Hermsen had lived alone for many years after the loss of her husband, Merrill Hermsen.

13. Berniece Hermsen now suffered from progressive medical illnesses, including Parkinson's Disease, Osteoarthritis of the hips and knees, and failing eyesight.

14. In 2008 Berniece's medical care provider, Kasey Hansen, a certified nurse practitioner in Bonesteel, began recommending to Berniece that she enter an assisted living facility.

15. In December, 2008, Kasey Hansen, strongly recommended that Berniece enter a supervised care facility due to the fact that she could no longer safely live alone and provide for her own general health and safety needs, and without supervised care her condition would be adversely affected.

16. Berniece Hermsen entered assisted living care pursuant to medical orders issued by Kasey Hansen, CNP, on January 5, 2009.

17. With the help of her nephew, Terry Burke, and his wife, Diane Burke, Berniece submitted a claim for benefits under her policy with Defendants on January 13, 2009.

18. Berniece Hermsen met the eligibility requirements of the policy under medical necessity.

19. On February 27, 2009, Defendants issued a denial of Berniece's claim, stating that she did not meet the requirements of the policy since she didn't need assistance with 2 ADLs and wasn't cognitively impaired. This is a misrepresentation of the policy requirements, which also includes medical necessity. The denial letter did not mention or discuss medical necessity.

20. On Berniece's behalf, Diane Burke filed a complaint with the South Dakota Division of Insurance on April 7, 2009.

21. In response to the complaint, Defendants wrote a letter dated April 21, 2009, saying that Berniece did not qualify for benefits because she wasn't "receiving any care for treating a diagnosed condition," wasn't cognitively impaired, and didn't need assistance with two activities of daily living.

22. Defendants again misinterpreted the policy requirements, this time by requiring that Berniece be receiving "prescribed care for treating a diagnosed condition" in order to qualify under the medical necessity trigger. The policy contains no such requirement.

23. Moreover, Defendants misrepresented the requirements of the functional incapacity trigger by stating that "additionally, Ms. Hermsen requires only assistance to the bath, not assistance with 'bathing' as defined."

24. Bathing is actually defined as "including the task of getting into or out of a tub or shower."

25. In addition, by being unable to safely get into and out of a bathtub or shower without assistance, Berniece Hermsen also qualified as needing assistance with "transferring," which is defined as: "you cannot, without the aid of another person, walk or get in or out of a chair, wheelchair, bed, or other stationary position."

26. Berniece Hermsen could not get into or out of a bathtub, which is a stationary position.

27. No reasonable basis for denial existed, and Defendants knew that no reasonable basis existed.

28. Defendants also failed to conduct a reasonable investigation, including the following:

    a. Failed to provide an attending physician's statement to the treating care provider that had prescribed the care;

    b. Failed to inquire, in any manner, why the attending physician believed Berniece Hermsen needed assisted living care, and whether her condition would be adversely affected in the absence of the care.

      c.      Failed to seek information from the treating care provider, or even obtain a plan of care signed by the physician, as required by the policy.

      d.      Failed to properly investigate whether Berniece Hermsen required assistance with transferring in and out of "other stationary positions" other than a bed or a chair;

29. Defendants have a practice of not contacting treating physicians to obtain information that might support eligibility for benefits. Defendants also have a practice of not sending a Plan of Care to the physician for the physician's signature, even though this is a requirement of eligibility under the policy.

30. Defendants have a pattern and practice of failing to conduct a reasonable investigation focused on finding facts that support eligibility, and instead, focus their investigation on finding facts that support denial.

31. Defendants do not apply the provisions of the policy in accord with the contract language or the law.

32. Defendants routinely misrepresent the policy coverage and eligibility requirements to elderly policyholders.

33. After multiple efforts by the family to obtain Berniece Hermsen's benefits from Defendants, Defendants began issuing benefit payments effective August 2, 2009. However, Defendants refused to submit payment back to January 5, 2009, the date that

she first entered assisted living care.

34. Berniece Hermsen died on July 29, 2010.

35. On February 2, 2012, Plaintiff's counsel contacted Defendants, through their counsel, and requested (1) payment of the amounts owing to Berniece Hermsen's Estate, (2) correction of under-payments to other policyholders, (3) requested that Ability agree that its interpretation of the medical necessity provision is improper, and agree to stop doing it.

36. Defendants responded by sending a check for the benefits owing to Berniece Hermsen's Estate, as well as a portion of the interest owing, but did not agree to correct the under-payments to any other policyholders, or to stop doing the same thing to other policyholders.

37. As part of their unreasonable denial and delay of benefits to Berniece Hermsen, Defendants withheld over $17,000.00 in moneys owing to Berniece Hermsen until almost 2 years after her death.

38. In addition to withheld monetary benefits, Defendants also caused Berniece Hermsen emotional upset, aggravation, distress, annoyance, and other harms, and also caused upset, aggravation, distress, annoyance, and other harms to Terry Burke, her Power of Attorney and now personal representative of her estate.

39. Defendants conduct here is part of a pattern of ignoring policy provisions, misrepresenting policy provisions, and improperly applying policy provisions in order to

reduce claim payments and wrongfully withhold benefits from elderly policyholders.

40. Defendants have engaged in oppression, fraud, and malice, with respect to the rights of the Plaintiff, and punitive damages are appropriate in order to stop this from happening in these and other instances.

WHEREFORE, Plaintiff seeks the following relief:

1. Compensatory damages in an amount to be determined at trial.

2. Punitive damages in an amount to be determined at trial.

3. Prejudgment interest as allowed by law.

4. Other relief as deemed appropriate and necessary.

**PLAINTIFFS DEMAND TRIAL BY JURY**

Dated this 23 day of March, 2012.

By: /s/ Mike Abourezk
Mike Abourezk
Attorneys for Plaintiff
Post Office Box 9460
2020 W. Omaha St.
Rapid City, South Dakota 57709
(605) 342-0097
Mike@abourezk.com