UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | | |
|---|---|---|
| TERRY BURKE as personal representative of the estate of Berniece Hermsen, and in his capacity as previous attorney in fact for Berniece Hermsen, | ) ) ) ) ) | CIV. 12-4051-KES |
| Plaintiff, | ) ) ) | MEMORANDUM OPINION AND ORDER |
| vs. | ) ) ) | |
| ABILITY INSURANCE COMPANY, f/k/a Medico Life Insurance Company; ABILITY RESOURCES, INC.; ABILITY RESOURCES HOLDINGS, INC.; ABILITY REINSURANCE HOLDINGS LIMITED, BERMUDA; and ABILITY REINSURANCE  LIMITED, BERMUDA, | ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

Plaintiff, Terry Burke, personal representative of the estate of Berniece

Hermsen, brought this claim against defendants alleging breach of contract, bad

faith, fraud and misrepresentation, and RICO violations stemming from the

scope of coverage of Hermsen's long-term care insurance policy. Docket 31.

Defendants, Ability Resources Holdings, Inc., Ability Reinsurance (Bermuda)

Limited, and Ability Reinsurance Holdings Limited (collectively referred to as

noncontracting defendants) move to be dismissed as parties to the action

because they claim that personal jurisdiction cannot be asserted over them

when they have no contacts with the state of South Dakota and the legal theories of piercing the corporate veil, alter ego, and agency do not apply. Docket 40. Burke resists that motion and claims that he can meet the personal jurisdictional threshold and establish minimum contacts. Docket 52. Ability Resources, Inc. (ARI), and Ability Insurance Company (AIC) move to dismiss any allegations in Burke's amended complaint relating to a civil RICO claim, and ARI moves to dismiss the breach of contract claim against it. Docket 44. Burke resists that motion. Docket 55.

## BACKGROUND

Mutual Protective Insurance sold a policy of long-term care insurance to Hermsen, a South Dakota resident, in January of 2000. Docket 31 ¶ 5. Generally, Hermsen's policy required that nursing or long-term care benefits be given to an insured that meets the qualifications contained in the policy. Hermsen entered an assisted living facility on January 5, 2009. Docket 31 ¶ 19. She and her family[1] submitted a claim for benefits under her policy on January 13, 2009. Docket 31 ¶ 20. On February 27, 2009, Hermsen received a denial letter stating that she did not meet the eligibility requirements of her policy. *Id.* Specifically, Burke alleges that Hermsen's denial letter did not discuss the medical necessity provision/trigger in her policy and Ability did not consult Hermsen's treating physician on her need for care. Docket 52 at 22.

---

[1] Terry Burke is Hermsen's nephew. Docket 31 ¶ 20.

2

Hermsen's and many other insured's long-term care insurance policies were eventually acquired by Medico Life Insurance Company. Docket 31 ¶ 6. In September of 2007, Medico Life Insurance Company was acquired by ARI, and Medico became AIC. Docket 31 ¶¶ 6-7. While AIC is the entity that contracts with insureds to purchase insurance, AIC and its owner, ARI, have a number of related entities. Ability Resources Holdings, Inc. is the holding company for ARI. AIC contracts with Ability Reinsurance (Bermuda) Limited to act as a reinsurer of its risk, and AIC pays approximately 75 percent of its premium revenues to Ability Reinsurance (Bermuda) Limited as the payment for providing reinsurance. Docket 31 ¶ 9. Finally, Ability Reinsurance Holdings Limited is the holding company of Ability Reinsurance (Bermuda) Limited. Donald Charsky is the president and CEO of Ability Resources Holdings, the holding company above AIC and ARI. Michael Crow is the president and CEO of the Bermuda companies, Ability Reinsurance Holdings Limited and Ability Reinsurance (Bermuda) Limited.

All Ability entities are named defendants in this case. Burke alleges that defendants "are an association of entities acting together for the purpose of providing long-term care insurance under the name Ability Insurance and also act as the alter egos and/or agents of each other." Docket 31 ¶ 4.

## STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 12(b)(2), the court may dismiss an action for lack of personal jurisdiction. Fed. R. Civ. P. 12(b)(2). "To survive a motion to dismiss for lack of personal jurisdiction, a plaintiff 'must state sufficient facts in the complaint to support a reasonable inference that [the defendants] can be subjected to jurisdiction within the state.' " *Dever v. Hentzen Coatings, Inc.*, 380 F.3d 1070, 1072 (8th Cir. 2004) (quoting *Block Indus. v. DHJ Indus., Inc.*, 495 F.2d 256, 259 (8th Cir. 1974)). If jurisdiction is denied or controverted, then the plaintiff carries the burden of showing such facts exist to support jurisdiction. *Id.*

To defeat a motion to dismiss based on personal jurisdiction, the plaintiff need only make a prima facie showing of jurisdiction. *Epps v. Stewart Info. Servs. Corp.*, 327 F.3d 642, 647 (8th Cir. 2003) (citation omitted). Plaintiff's prima facie showing of jurisdiction is not tested by the pleadings alone, but also "affidavits and exhibits presented with the motions and in opposition thereto." *Dever*, 380 F.3d at 1072 (quotation omitted). A court considering whether personal jurisdiction is proper "must view the evidence in the light most favorable to the plaintiff and resolve all factual conflicts in its favor in deciding whether the plaintiff made the requisite showing." *K-V Pharm. Co. v. J. Uriach & CIA, S.A.*, 648 F.3d 588, 592 (8th Cir. 2011).

When reviewing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the court assumes that all facts in the complaint are true and construes any reasonable inferences from those facts in the light most favorable to the nonmoving party. *Schaaf v. Residential Funding Corp.,* 517 F.3d 544, 549 (8th Cir. 2008). To decide the motion to dismiss under Rule 12(b)(6), the court may consider the complaint, some materials that are part of the public record, or materials embraced by the complaint. *Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999). To survive the motion to dismiss, the complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The factual content in the complaint must "allo[w] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Braden v. Wal-Mart Stores*, 588 F.3d 585, 594 (8th Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

## DISCUSSION

### I.   Minimum Contacts

"A federal court in a diversity action may assume jurisdiction over nonresident defendants only to the extent permitted by the long-arm statute of the forum state and by the Due Process Clause." *Morris v. Barkbuster, Inc.*, 923 F.2d 1277, 1280 (8th Cir. 1991). The South Dakota long-arm statute confers jurisdiction to the fullest extent possible under the Constitution, thus, the

court's inquiry is whether this claim satisfies due process. *Bell Paper Box, Inc. v. Trans W. Polymers, Inc.*, 53 F.3d 920, 921 (8th Cir. 1995) (citations omitted); *see also Minn. Mining & Mfg. Co. v. Nippon Carbide Indus., Inc.*, 63 F.3d 694, 697 (8th Cir. 1995) (noting that if the state statute extends to the maximum length allowed under the Fourteenth Amendment, then the only inquiry is whether the exercise of personal jurisdiction meets the standards of due process).

For due process to be satisfied, a defendant must have minimum contacts with the forum state such that personal jurisdiction can be asserted over them. *Myers v. Casino Queen, Inc.*, 689 F.3d 904, 910 (8th Cir. 2012) (citing *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). "Contacts with the forum state must be sufficient that requiring a party to defend an action would not 'offend traditional notions of fair play and substantial justice.' " *Id.* The necessary "substantial connection" between the forum state and defendant "must come about by an action of the defendant purposefully directed toward the forum State.' " *Id.* (quoting *Asahi Metal Indus. Co. v. Super. Ct. of Cal.*, 480 U.S. 102, 112 (1987)).

The United States Supreme Court has noted that two types of personal jurisdiction may exist over a party: general and specific. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414-15 (1984). General jurisdiction means that the party has contacts with the forum that are so "continuous and systematic" that they do not have to arise out of the party's contacts with the

6

forum or the cause of action itself. *Id.* at 415. The court can also have specific jurisdiction over a defendant, which "unlike general jurisdiction, requires a relationship between the forum, the cause of action, and the defendant." *Myers*, 689 F.3d at 912 (citing *Helicopteros*, 466 U.S. at 414).

The Eighth Circuit Court of Appeals asks courts to consider the following factors for their personal jurisdiction determination: " '(1) the nature and quality of [a defendant's] contacts with the forum state; (2) the quantity of such contacts; (3) the relation of the cause of action to the contacts; (4) the interest of the forum state in providing a forum for its residents; and (5) [the] convenience of the parties.' " *Dever*, 380 F.3d at 1073-74 (quoting *Burlington Indus., Inc. v. Maples Indus., Inc.*, 97 F.3d 1100, 1102 (8th Cir. 1996)). The most weight is given to the first three of these factors. *Johnson v. Arden*, 614 F.3d 785, 794 (8th Cir. 2010) (citation omitted).

The parties do not dispute that the noncontracting defendants do not have general contacts with the state of South Dakota. It is also undisputed that the noncontracting defendants were not a party to Hermsen's long-term care insurance policy, thus, the court does not have specific jurisdiction over the cause of action. Burke now has the burden of establishing a prima facie case that the noncontracting defendants are responsible for the actions of their

subsidiary, AIC, as the agent, instrumentality, or alter ego[2] of the

noncontracting defendants or at the very least show a "close, synergistic

relationship that is not an abuse of the corporate organizational form, but is

clearly relevant to the jurisdictional question." *Viasystems, Inc. v. EBM-Papst St.*

*Georgen GmbH & Co.*, 646 F.3d 589, 592 (8th Cir. 2011).

### A.      Piercing the Corporate Veil/Alter Ego

Courts generally do not presume that a parent corporation is liable for the

actions of its wholly owned subsidiary. *United States v. Bestfoods*, 524 U.S. 51,

61 (1998). There is an exception to this presumption, however " 'where one

corporation is so organized and controlled and its affairs are so conducted that

it is, in fact, a mere instrumentality or adjunct of [the parent] corporation.' "

*Epps*, 327 F.3d at 649 (quoting *Lakota Girl Scout Council, Inc. v. Havey Fund-*

*Raising Mgmt., Inc.*, 519 F.2d 634, 637 (8th Cir. 1975)). "If the resident

subsidiary corporation is the alter ego of the nonresident corporate defendant,

the subsidiary's contacts are those of the parent corporation's, and due process

is satisfied." *Id.* The Eighth Circuit has stated that "piercing the corporate veil, if

only to establish jurisdiction over parent corporation, is a drastic approach

---

[2] *See Tyson Fresh Meats, Inc. v. Lauer Ltd., L.L.C.*, ____ F. Supp. 2d ____,
2013 WL 173794, at *8 (N.D. Iowa Jan. 16, 2013) ("Thus, as to Plaintiff's
breach of contract and unjust enrichment causes of action, alter ego and/or
piercing the corporate veil theory is sufficient to subject the newly added
Defendants to the personal jurisdiction of this Court, as long as Plaintiff
succeeds in making prima facie showing that [defendant]'s corporate veil
should be pierced and or [defendant] is the alter ego of the newly added
Defendants.").

authorized only in the most extreme situations." *Lakota Girl Scout Council, Inc.*, 519 F.2d at 637.

"State law is viewed to determine whether and how to pierce the corporate veil." *Epps*, 327 F.3d at 649. South Dakota law[3] provides that "[a] parent corporation is liable for the acts of its subsidiary under the instrumentality exception when (1) the parent controls the subsidiary to such a degree as to render the latter the mere instrumentality of the former; and (2) adherence to the rule of corporate separateness would produce injustices and inequities." *Glanzer v. St. Joseph Indian Sch.*, 438 N.W.2d 204, 207 (S.D. 1989) (citations omitted). A parent is also responsible for the conduct of its subsidiaries "when an agency relationship exists between them." *Id.* (citations omitted).

The South Dakota Supreme Court has also adopted and acknowledged additional factors to consider under the first factor in the instrumentality exception. These factors indicate the "control" necessary for the parent to be liable for the actions of the subsidiary:

(a)  The parent corporation owns all or most of the capital stock of the subsidiary.

(b)  The parent and subsidiary corporations have common directors or officers.

_____

[3] Although the issue of piercing the corporate veil involves different states' laws of incorporation, the noncontracting defendants are foreign defendants. Both parties briefed this substantive issue under South Dakota law. Thus, the court will assume without deciding that South Dakota law applies to this cause of action.

9

(c)     The parent corporation finances the subsidiary.

(d)     The parent corporation subscribes to all the capital stock of the subsidiary or otherwise causes its incorporation.

(e)     The subsidiary has grossly inadequate capital.

(f)     The parent corporation pays the salaries and other expenses or losses of the subsidiary.

(g)     The subsidiary has substantially no business except with the parent corporation or no assets except those conveyed to it by the parent corporation.

(h)     In the papers of the parent corporation or in the statements of its officers, the subsidiary is described as a department or division of the parent corporation, or its business or financial responsibility is referred to as the parent corporation's own.

(i)     The parent corporation uses the property of the subsidiary as its own.

(j)     The directors or executives of the subsidiary do not act independently in the interest of the subsidiary but take their orders from the parent corporation in the latter's interest.

(k)     The formal legal requirements of the subsidiary are not observed.

*Glanzer*, 438 N.W.2d at 207 (citations omitted).

This court considers these factors in making its decision on the motion to dismiss, but these factors are not exhaustive and all need not be present to conclude the subsidiary is the instrumentality of the parent. *Id.* "Each case is sui generis and must be decided in accordance with its own underlying facts." *Id.* (citation omitted). The Eighth Circuit has said that there is "[n]o all

10

embracing rule" to determine the relationship between related entities, but the circumstances of each case should be considered to determine if an entity has subjected itself to the jurisdiction of a state through the activities of another entity. *Epps*, 327 F.3d at 649.

Burke alleges that both AIC and ARI are owned by an intermediate parent, Ability Resources Holdings, Inc., which is then 100 percent owned by Ability Reinsurance Holdings Limited. The parties appear to agree that all Ability entities are either owned by another Ability entity or act as a holding company for another Ability entity. Thus, there are allegations that Ability parent companies own all of the capital stock of other Ability entities.

Burke also alleges that at the time Hermsen's claim was denied, at least one person, Donald Charsky, exercised control over the operations of all of the Ability entities, which would include the Bermuda and other noncontracting defendants. Docket 31 ¶ 45. That claim is supported by a management chart created by defendants that has Charsky listed as CEO and above management personnel of both Bermuda and United States Ability entities. Docket 52 at 34. Burke alleges that Charsky also had direct control or supervision over Donald Lawler, the person who signed Hermsen's benefit denial letter. Docket 31 ¶ 47. Burke did not allege any other officers or directors with common control over all entities. Burke did allege that the two Bermuda entities have common members of their boards of directors.

11

Burke further alleges that all start up money for the contracting defendant, AIC, came from Ability Reinsurance Holdings Limited in Bermuda and that AIC has access to additional financing through the same means. He also alleges that Ability Reinsurance Holdings Limited owns all of the stock of AIC and ARI directly or through ownership of Ability Resources Holdings, Inc. Burke does not allege that the subsidiaries are grossly undercapitalized, but he does allege that at least one entity, ARI, is deficient on its regulatory capital requirements. Docket 52 at 38. Additionally, Burke alleges that all of the affiliates or entities shared costs, including centralization of personnel and operational efficiencies and the personnel and facilities used for administrative services. Docket 52 at 38. Burke also alleges that the entities do not have substantial business with any entity except for each other or the policyholders that AIC serves. Docket 52 at 39.

Next, Burke alleges that the entities characterize the Ability group as one entity, which they tout as a full service insurance platform company. Moreover, Burke alleges that defendants' conduct of using each entity as a separate division further establishes the control the parents exercise over the subsidiary.[4] Burke alleges that although AIC owns the policies and collects the premiums,

---

[4] Burke admits that the factor discussing the parent corporation's use of a subsidiary's property does not apply here.

ARI serves as the claims department, and the Bermuda entities act as the investment department through the use of reinsurance. Docket 52 at 40.

Burke alleges that the subsidiary's directors do not act independently, but instead take orders from the parent/Bermuda entities because no independent entity would enter into an agreement to transfer its revenues to another entity, in particular, an entity outside of the country. Docket 52 at 41. Finally, Burke alleges that the subsidiary corporations do not follow the formal legal requirements like paying the taxes of one of its entities or electing officers at board meetings as required by company bylaws. Docket 52 at 42.

In sum, Burke has pleaded that these entities have similar governing bodies and that certain individuals within the hierarchy control the United States entities and exercise some sort of control over the Bermuda entities as well. There are allegations that money moves from the United States entities to the Bermuda entities, which could give the outward appearance that the United States entities act as instrumentalities of the Bermuda entities. Finally, there are allegations that those who exercise control over the Bermuda entities also exercise control over those who directly handled or denied Hermsen's claim, which provides a nexus from all defendants to this cause of action.

Although Burke did not meet all the factors listed in *Glanzer*, he was not required to and the list is not exhaustive. *Glanzer*, 438 N.W.2d at 207 ("All of these factors need not be present for the trier of fact to conclude that the

subsidiary is a mere instrumentality of its parent."). These allegations pleaded at this stage of the litigation are sufficient to establish, for personal jurisdictional purposes on a motion to dismiss, that the noncontracting defendants have exercised control of the subsidiary to such a degree as to render the latter the mere instrumentality of the former.

Burke also brought forth sufficient facts to establish that retention of the rule of corporate separateness would produce injustices and inequities in this case. "The second leg of the instrumentality exception is established where the wrong alleged is a result of fraudulent, unjust, or illegal acts." *Glanzer*, 438 N.W.2d at 207 (citations omitted). There is evidence to suggest that all entities were potentially engaging in unjust conduct through their handling of a claimant's or Hermsen's policies. If those defendants were involved in the alleged fault or harm caused against Hermsen and the noncontracting defendants were dismissed or liability could not be apportioned to them, then an injustice or inequity could result. Although fault must first be established by a jury, the jury should be allowed to apportion fault as it sees fit to prevent injustice and to properly distribute liability. *See Kan. Gas & Elec. Co. v. Ross*, 521 N.W.2d 107, 112 (S.D. 1994) (asking whether "adherence to the fiction of separate corporate existence [would] sanction fraud, promote injustice or inequitable consequences or lead to an evasion of legal obligations?").

14

Viewing the evidence in the light most favorable to Burke as the nonmoving party and party who must establish jurisdiction, the court finds that he has met his burden and established a prima facie case of personal jurisdiction to all defendants to the extent of surviving a motion to dismiss based on piercing the corporate veil or alter ego. *See Dakota Indus., Inc. v. Dakota Sportswear, Inc.*, 946 F.2d 1384, 1387 (8th Cir. 1991) ("While it is true that the plaintiff bears the ultimate burden of proof on this issue, [personal] jurisdiction need not be proved by a preponderance of the evidence until trial or until the court holds an evidentiary hearing."). There is sufficient evidence to show that AIC or ARI are the instrumentalities of all other Ability defendants.

The court also concludes that such a finding of personal jurisdiction would "not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co.*, 326 U.S. at 316 (quotations omitted). The court will not make a determination as to whether the corporate veil should be pierced because that ultimate determination is a question of fact that must be determined by the jury. *See Osloond v. Osloond*, 609 N.W.2d 118, 122 (S.D. 2000) ("Whether the corporate veil should be pierced is a question of fact[.]"). Burke has merely pleaded enough to keep all defendants in this case for the jury to later determine liability and apportionment of that liability, if it exists.

### B.    Agency

Burke claims that another way that he can meet his jurisdictional burden is to show that AIC and ARI were acting as the agents of the noncontracting defendants, and thus, their actions and contacts can be attributed to the noncontracting defendants. Defendants argue that plaintiff has pleaded no facts through which the court could infer that an actual or implied agency exists and that plaintiff cannot meet the three elements necessary to establish an agency relationship. "To establish an agency relationship there must be a (1) manifestation by the principal that the agent shall act for him, (2) the agent's acceptance of the undertaking, and (3) the understanding of the parties that the principal is to be in control of the undertaking." *Bernie v. Catholic Diocese of Sioux Falls*, 821 N.W.2d 232, 240 (S.D. 2012) (quotation and citation omitted).

The Eighth Circuit has stated that it is not free to adopt an agency-like finding of personal jurisdiction when a parent/subsidiary relationship is alleged to exist "because it is inconsistent with our precedent." *Viasystems, Inc.*, 646 F.3d at 596. The court reasoned that " 'personal jurisdiction can be based on the activities of [a] nonresident corporation's in-state subsidiary . . . *only* if the parent so controlled and dominated the affairs of the subsidiary that the latter's corporate existence was disregarded so as to cause the residential corporation to act as the nonresidential corporate defendant's alter ego.' " *Id.* (quoting *Epps*, 327 F.3d at 648-49) (emphasis added). Thus, an agency route to personal

16

jurisdiction is unavailable in a case like this, where the court found that the jurisdictional requirement was met under an alter ego/piercing the corporate veil theory.

## II.   RICO Claims

AIC and ARI move to dismiss Burke's RICO claims. Defendants allege that Burke has failed to state a RICO cause of action against them because Burke cannot establish a sufficient enterprise, a pattern of racketeering activity, or sufficient predicate acts of mail or wire fraud of the enterprise that caused Hermsen's injury and that Burke cannot convert a typical insurance dispute into a RICO violation.

"When examining a motion to dismiss a RICO claim based on mail and wire fraud, a court must determine 'whether the plaintiffs have sufficiently pleaded mail and wire fraud under the standard of Rule 9(b).' " *Midwest Special Surgery, P.C. v. Anthem Ins. Cos.*, Civ. No. 09-646, 2010 WL 716105, at *8 (E.D. Mo. Feb. 24, 2010) (quoting *Abels v. Farmers Commodities Corp.*, 259 F.3d 910, 918 (8th Cir. 2001)). Federal Rule of Civil Procedure 9(b) requires that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). "[A] plaintiff must specifically allege the circumstances constituting fraud, including such matters as the time, place and contents of false representations, as well as the identity of the person making the misrepresentation and what was obtained or

17

given up thereby." *Abels*, 259 F.3d at 920 (internal citations and quotations omitted). Allegations of mail or wire fraud "consist in the foreseeable use of the mails or wire for the purpose of carrying out a scheme to defraud." *Id.* at 918.

"Section 1962 of the RICO Act makes it 'unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity.' " *Nitro Distrib. Inc. v. Alticor, Inc.*, 565 F.3d 417, 428 (8th Cir. 2009) (quoting 18 U.S.C. § 1964(c)). To establish a RICO violation under 18 U.S.C. § 1962(c), the plaintiff must show "(1) the existence of an enterprise; (2) conduct by the defendants in association with the enterprise; (3) the defendants' participation in at least two predicate acts of racketeering; and (4) conduct that constitutes a pattern of racketeering activity." *In re Sac & Fox Tribe of Miss. in Iowa/Meskwaki Casino Litig.*, 340 F.3d 749, 767 (8th Cir. 2003).

### A.   Enterprise

An enterprise means "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). To establish a RICO violation, the plaintiff must always be able to establish the existence of an enterprise as it "remains a separate element which must be proved[.]" *Craig*

18

*Outdoor Adver., Inc. v. Viacom Outdoor, Inc.*, 528 F.3d 1001, 1026 (8th Cir. 2008)

(quoting *United States v. Turkette*, 452 U.S. 576, 583 (1981)).

Under the RICO statute a "person" is "any individual or entity capable of

holding a legal or beneficial interest in property." 18 U.S.C. § 1961(3). A

corporation can act as a person for the purposes of § 1962(c). *Fogie v. THORN*

*Ams., Inc.*, 190 F.3d 889, 896 (8th Cir. 1999). The Eighth Circuit, however, has

stated that it "must consider whether a subsidiary may be sufficiently distinct

from its parent or other related subsidiaries so as to satisfy § 1962(c)'s

distinctiveness requirement. We believe it cannot." *Id.* The court also noted that

"as a matter of law a parent corporation and its wholly owned subsidiaries are

legally incapable of forming a conspiracy with one another." *Id.*

Burke argues that the enterprise here consists of "Defendants and Ability

officers, employees, or agents identified in the Amended Complaint" and he

generally includes references throughout the amended complaint to acts

accomplished by Charsky, Lawler, or Ability handlers. But the amended

complaint fails to allege the enterprise with particularity and does not specify

which agents, officers, employees, or entities conspired together or together

formed an enterprise to engage in racketeering activity. It is insufficient that

Burke uses generic references to "defendants" or cites acts or facts that do not

relate to Hermsen or Burke when attempting to plead his RICO claim. The court

concludes that the RICO allegations brought in the amended complaint fail to

19

satisfy the requirements of Federal Rule of Civil Procedure 9(b) or *Twombly* on a number of grounds. *See Manion v. Freund*, 967 F.2d 1183, 1186 (8th Cir. 1992) ("Appellant identified numerous communications by mail or telephone, but failed to allege a scheme to defraud or to specify in what respect the communications were fraudulent or how they were used in furtherance of a scheme to defraud.").

### B.    Predicate Acts and Pattern of Racketeering

Additionally, Burke has failed to allege that the unlawful predicate acts or fraudulent use of the mails or wire was the proximate cause of Hermsen's harm. Burke alleges that both ARI and AIC committed at least two predicate acts under § 1962 through administration of claims, creation of the claim procedures that led to the denial of Hermsen's claim, misrepresentation of policy provisions, and authoring the denial letters of Hermsen's claim. Docket 31 ¶¶ 82, 102-105, 115. Burke has not alleged, however, how specifically any of the defendants committed the predicate acts of mail or wire fraud or how those acts pertain to Hermsen.

The majority of the allegations in Burke's amended complaint that discusses the RICO claim are not connected to Burke or Hermsen. The predicate acts alleged pertain to other policyholders in other states, which do not relate to any alleged harm to Hermsen. Burke alleges that "defendants conspire to misrepresent policy eligibility requirements by mail and phone . . . to increase

20

revenues to the Defendants," and that "Defendants have committed fraud and misrepresentation by U.S. mail and by wire (telephone) many times." Docket 31 ¶¶ 103-105. The only specific allegation that is correlated to Hermsen is that Lawler sent a letter denying Hermsen's claim on February 27, 2009. Burke has failed to plead two predicate acts or a pattern of racketeering with sufficient particularity. *See Commercial Prop. Invs., Inc. v. Quality Inns Int'l, Inc.*, 61 F.3d 639, 644 (8th Cir. 1995) (dismissing case where "Plaintiff failed to properly allege . . . at least two predicate acts committed by each defendant.").

Additionally, Burke's general allegations about a fraudulent scheme are insufficient to meet the heightened pleading requirements. *See Crest Constr. II, Inc. v. Doe*, 660 F.3d 346 (8th Cir. 2011) ("While the complaint is awash in phrases such as 'ongoing scheme,' 'pattern of racketeering,' and 'participation in a fraudulent scheme,' without more, such phrases are insufficient to form the basis of a RICO claim."). Burke stated that defendants engaged in certain conduct and that such conduct constituted a predicate act, but he failed to provide the nexus between a civil conspiracy and harm to Hermsen. There is no evidentiary correlation between the denial of Hermsen's claim and any fraudulent act by a specifically alleged defendant. The allegations are too conclusory or attenuated to find the requisite nexus required for the RICO

21

offense to survive[5] this stage of the litigation. *See Iqbal*, 556 U.S. at 679 (determining that conclusory allegations do not meet the plausibility requirement and "are not entitled to the assumption of truth."); *Commercial Prop. Invs., Inc.*, 61 F.3d at 644 ("Because one of the main purposes of [Rule 9(b)] is to facilitate a defendant's ability to respond and to prepare a defense to charges of fraud, conclusory allegations that a defendant's conduct was fraudulent and deceptive are not sufficient to satisfy the rule."). Moreover, the Eighth Circuit has reiterated that courts are not to allow parties to convert normal civil disputes into RICO cases. *See Terry A. Lambert Plumbing, Inc. v. W. Sec. Bank*, 934 F.2d 976, 981-82 (8th Cir. 1991) (refusing to find a RICO violation when a bank was acting like a bank in the normal course of business).

Burke argues that even if he cannot establish the predicate acts of the enterprise, that defendants aided and abetted a RICO violation. Other courts have concluded that there is no private cause of action for aiding and abetting a RICO violation, and the court agrees. *See Young v. Wells Fargo & Co.*, 671 F. Supp. 2d 1006, 1028-29 (S.D. Iowa 2009) ("The Court concurs with other courts that have concluded that this structure [of the RICO statute] indicates that Congress intended § 1962(c) to reach only actors directly involved in racketeering activities, and not aiders and abettors.") (citations omitted). The

---

[5] Additionally, Burke argues that defendants conspired to violate RICO. A civil RICO conspiracy action, however, cannot proceed when the plaintiff has failed to state with particularity the elements of RICO itself.

RICO claim in the amended complaint is dismissed without prejudice in its entirety.

### III.   Breach of Contract and Duty of Good Faith/Fair Dealing

ARI alleges that because it is not a party to Hermsen's contract, it is not subject to a breach of contract or duty of good faith or fair dealing claim. The court already made a determination that it has personal jurisdiction over ARI and all of the other Ability entities at this stage of the litigation through the contacts of the contracting entity, AIC. A similar analysis would suggest that ARI is in privity with AIC; thus, it can also be liable for breach of contract because "[w]here the alter ego doctrine applies . . . the two corporations are treated as one for purposes of determining liability." *M/V Am. Queen v. San Diego Marine Constr. Corp.*, 708 F.2d 1483, 1490 (9th Cir. 1983); *see also Tyson Fresh Meats, Inc.*, ____ F. Supp. 2d ____, 2013 WL 173794, at *8 (stating that "alter ego and/or piercing the corporate veil theory" was sufficient personal jurisdictional grounds to subject defendant to breach of contract claim).

Burke also alleges that there is a nexus between ARI and the claim denial standards or best practices that were jointly established by all defendants and were alleged to have been improperly used against Hermsen. Specifically, Burke alleges that ARI provided claim administration to AIC at the time of Hermsen's claim. Docket 31 ¶ 65. That is conduct that is related to Hermsen's insurance

contract and is relevant to Burke's claims. At this stage of the litigation, these factual allegations are sufficient to survive a motion to dismiss.

## IV.  Personal Damages to Burke Individually

Defendants allege that Burke cannot make a claim for his own emotional distress because he is only involved in this lawsuit in the capacity as the personal representative of the estate of Berniece Hermsen. The court agrees. Burke did not allege in his amended complaint that he brought this cause of action in his own capacity in addition to his capacity as personal representative. Thus, Burke's individual claim for damages is dismissed because it has no correlation to the damages of Hermsen's estate.

## CONCLUSION

Burke brought forth sufficient factual allegations to establish a prima facie case of personal jurisdiction over the noncontracting defendants in South Dakota through a theory of piercing the corporate veil or alter ego. Burke's RICO claim is dismissed because he failed to show an enterprise or a pattern of racketeering activity and he failed state his claim with particularity. Burke's breach of contract and duty of good faith and fair dealing claim against ARI survives the motion to dismiss. But Burke is not entitled to damages in his individual capacity. Accordingly, it is

24

ORDERED that Ability Resources Holdings, Inc., Ability Reinsurance Holdings Limited, and Ability Reinsurance (Bermuda) Limited's motion to dismiss (Docket 40) is denied.

IT IS FURTHER ORDERED that Ability Insurance Company and Ability Resources, Inc.'s motion to dismiss (Docket 44) is granted as it pertains to the RICO count and Burke's claim of personal damages.

IT IS FURTHER ORDERED that Ability Resources, Inc.'s motion to dismiss (Docket 44) is denied as it pertains to breach of contract or violation of the duty of good faith and fair dealing.

Dated February 22, 2013.

BY THE COURT:

/s/ *Karen E. Schreier*
KAREN E. SCHREIER
UNITED STATES DISTRICT JUDGE

25