UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | |
|---|---|
| TERRY BURKE as personal representative of the estate of Berniece Hermsen, and in his capacity as previous attorney in fact for Berniece Hermsen, | CIV. 12-4051-KES |
| Plaintiff, | |
| vs. | ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR PROTECTIVE ORDER |
| ABILITY INSURANCE COMPANY, f/k/a Medico Life Insurance Company; ABILITY RESOURCES, INC.; ABILITY RESOURCES HOLDINGS, INC.; ABILITY REINSURANCE HOLDINGS LIMITED, BERMUDA; and ABILITY REINSURANCE LIMITED, BERMUDA, | |
| Defendants. | |

This matter is before the court pursuant to a motion for a protective order filed by defendant Ability Insurance Company (AIC). Docket 94. Plaintiff, Terry Burke as personal representative of the estate of Berniece Hermsen, resists AIC's motion. Docket 99. AIC represents to the court that it has made a good-faith effort to resolve this dispute without the court's intervention.

**FACTS AND PROCEDURAL HISTORY**

This case is a diversity action alleging breach of contract, bad faith insurance practices, and fraud and misrepresentation on the part of Ability Insurance Company, Ability Resources, Inc., Ability Resources Holdings, Inc.,

Ability Reinsurance Holdings Limited, and Ability Reinsurance (Bermuda) Limited. This action stems from a policy of long-term care insurance that was issued to Hermsen in 2000. Burke claims that Hermsen entered an assisted living facility based on the advice of her medical care provider and that even though she was eligible for benefits under her long-term care policy, defendants denied her claim.

Burke served defendants with his first set of requests for production of documents. Docket 69-2. AIC moves for a protective order covering the following categories of information: (1) all documents that are confidential and proprietary in nature, "including, but not limited to, policy manuals, non-public contracts, compensation and personnel information, and proprietary information regarding how Ability Insurance adjudicates claims and performs its other business operations"; and (2) "non-public health information about South Dakota insurance consumers." Docket 94 at 1-2. In its proposed protective order AIC defines "confidential information" to "mean and include any materials (whether a document, testimony, or otherwise) which the producing party reasonably and in good faith believes contains information of a confidential commercial or personal nature." Docket 94-1 at 4.

AIC alleges that such information is the proper subject of a protective order as expressly stated by Federal Rule of Civil Procedure 26(c)(1)(G) and that the health and medical records are confidential under the Health Insurance Portability and Accountability Act of 1996 and various South Dakota state statutes. Burke does not dispute that AIC is entitled to a protective order, but he does object to AIC'S proposed language in the protective order. Burke

requests language similar to the language used in other protective orders entered by this court to which AIC was a named party defendant.[1]

## DISCUSSION

**I.    Standards Governing Requests for Protective Orders**

Federal Rule of Civil Procedure 26(c) governs the granting of a protective order and requires that "good cause" be shown for a protective order to be issued. "The burden is therefore upon the movant to show the necessity of its issuance, which contemplates 'a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements[.]' " *Gen. Dynamics Corp. v. Selb Mfg. Co.,* 481 F.2d 1204, 1212 (8th Cir. 1973) (quoting Wright & Miller, Federal Practice and Procedure: Civil § 2035 at 264-65, currently at 157-58); *see also Pansy v. Borough of Stroudsburg,* 23 F.3d 772, 786 (3d Cir. 1994) ("Good cause is established on a showing that disclosure will work a clearly defined and serious injury to the party seeking disclosure. The injury must be shown with specificity. Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not support a good cause showing.") (citations and quotation marks omitted).

---

[1] Burke also proposes that the parties agree that AIC need not produce discovery already produced in previous actions wherein Burke's attorney sued AIC alleging breach of contract and bad faith. Burke, however, has not cited any legal authority that authorizes the court to require a party to enter into such a stipulation. While the parties are free to enter into such a stipulation, the court is not aware of any legal authority that gives it the power to mandate such an arrangement without a stipulation between the parties. Therefore, this request is denied.

In *Pansy,* the Third Circuit Court of Appeals described the good cause standard in a manner that this court finds instructive. Although *Pansy* dealt specifically with the issue of whether the trial court abused its discretion in first granting and then subsequently refusing to modify a confidentiality order over a settlement agreement, confidentiality orders over matters concerning stages of litigation and protective orders over discovery are "functionally similar, and require similar balancing between public and private concerns." *Pansy*, 23 F.3d at 786. Additionally,

> In considering whether good cause exists for a protective order, the federal courts have generally adopted a balancing process. . . . [T]he court . . . must balance the requesting party's need for information against the injury that might result if uncontrolled disclosure is compelled. When the risk of harm to the owner of [a] trade secret or confidential information outweighs the need for discovery, disclosure [through discovery] cannot be compelled, but this is an infrequent result.
>
> Once the court determines that the discovery policies require that the materials be disclosed, the issue becomes whether they should be disclosed only in a designated way, as authorized by the last clause of Rule 26(c)(7) . . . . Whether this disclosure will be limited depends on a judicial balancing of the harm to the party seeking protection (or third persons) and the importance of disclosure to the public. Courts also have a great deal of flexibility in crafting the contents of protective orders to minimize the negative consequences of disclosure and serve the public interest simultaneously.

*Id.* at 787 (additional citations and quotation marks omitted).

The balancing test requires courts to consider a variety of factors to determine if a protective order is appropriate. *Id.* at 789. These factors, discussed below, "are unavoidably vague and are of course not exhaustive" so

4

as to provide courts with "the flexibility needed to justly and properly" resolve discovery disputes. *Id.* Moreover,

> [o]ne interest which should be recognized in the balancing process is an interest in privacy. It is appropriate for courts to order confidentiality to prevent the infliction of unnecessary or serious pain on parties who the court reasonably finds are entitled to such protection. In this vein, a factor to consider is whether the information is being sought for a legitimate purpose or for an improper purpose. However, privacy interests are diminished when the party seeking protection is a public person subject to legitimate public scrutiny.
>
> While preventing embarrassment may be a factor satisfying the "good cause" standard, an applicant for a protective order whose chief concern is embarrassment must demonstrate that the embarrassment will be particularly serious. As embarrassment is usually thought of as a nonmonetizable harm to individuals, it may be especially difficult for a business enterprise, whose primary measure of well-being is presumably monetizable, to argue for a protective order on this ground.
>
> Circumstances weighing against confidentiality exist when confidentiality is being sought over information important to public health and safety and when the sharing of information among litigants would promote fairness and efficiency.
>
> A factor which a court should consider in conducting the good cause balancing test is whether a party benefitting from the order of confidentiality is a public entity or official. Similarly, the district court should consider whether the case involves issues important to the public. . . . [I]f a case involves private litigants, and concerns matters of little legitimate public interest, that should be a factor weighing in favor of granting or maintaining an order of confidentiality.

*Id.* at 787-88 (internal quotation marks, footnotes, and citations omitted). When dealing with sensitive or proprietary information, courts routinely grant protective orders that limit who may access the disclosed information

5

and how the disclosed information may be used. *Id.* at 787 (additional citation omitted). Rule 26(c) confers " 'broad discretion on the [district] court to decide when a protective order is appropriate and what degree of protection is required.' " *Miscellaneous Docket Matter No. 1 v. Miscellaneous Docket Matter No. 2*, 197 F.3d 922, 925 (8th Cir. 1999) (quoting *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36 (1984)).

## II. Policy Manuals and Proprietary Information Regarding Claims Handling and Business Operations

AIC argues in footnote 1 of its brief that its policy manuals and other proprietary information regarding claims handling and business operations are trade secrets or other confidential research, development, or commercial information pursuant to Rule 26(c)(1)(G). Courts may grant protective orders to prevent or limit the disclosure of trade secrets or "other confidential research, development, or commercial information." Fed. R. Civ. P. 26(c)(1)(G). The importance of protecting trade secrets is explained by the Eighth Circuit Court of Appeals:

> Confidential business information has long been recognized as property. Because of the intangible nature of a trade secret, however, the extent of the property right therein is defined by the extent to which the owner of the secret protects his interest from disclosure to others. Public disclosure of trade secrets extinguishes the owner's property rights.

*In re Remington Arms Co.*, 952 F.2d 1029, 1032 (8th Cir. 1991) (internal quotation marks and citations omitted).

Rule 26(c) thus serves to facilitate disclosure of sensitive information that

6

parties may be reluctant to disclose without protection. "If they suspect that their trade secrets may fall into the wrong hands, parties may be uncooperative with respect to discovery requests. Assuring the safety of these sensitive disclosures often has the effect of encouraging the apprehensive litigants to fully cooperate with the discovery process." *Andrew Corp. v. Rossi,* 180 F.R.D. 338, 340 (N.D. Ill. 1998) (citing *In re Krynicki*, 983 F.2d 74, 75 (7th Cir. 1992)).

The burden rests on the party opposing discovery, here AIC, to show that a protective order is warranted for trade secret information. *In re Remington Arms Co.,* 952 F.2d at 1032. To meet its burden, AIC must show (1) that the information qualifies for protection, i.e., that the information is confidential or a trade secret and (2) that AIC would be harmed by disclosure of the information. *Id.* Courts look to applicable state law to determine if the requested documents qualify as trade secrets. *Id.* at 1033.

The South Dakota Uniform Trade Secrets Act, codified at SDCL 37-29-1, defines a trade secret as follows:

> (4) Trade secret, information, including a formula, pattern, compilation, program, device, method, technique, or process, that:
>
> (i) Derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use; and
>
> (ii) Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

SDCL 37-29-1(4).

Once AIC shows that the requested information constitutes a trade secret, the burden then shifts to Burke "to show that the information is relevant to the subject matter of the lawsuit and is necessary to prepare the case for trial." *In re Remington Arms Co.*, 952 F.2d at 1032. If Burke shows both relevance and need, then the court "must weigh the injury that disclosure might cause to the property against [Burke's] need for the information." *Id.* If both parties satisfy their respective burdens of proof, the court must issue a protective order to safeguard the rights of the parties, taking into account the following considerations:

> First, use of the discovered information should be limited to the particular lawsuit in which it has been shown to be both relevant and necessary to the prosecution of the case. Second, the protective order should limit the persons who are given access to the trade secrets. Third, the protective order should limit, or prohibit entirely, the reproduction of all confidential documents. Fourth, the protective order may require a bond to protect against the risk of injury from the disclosure of the trade secrets. Finally, the protective order may designate an attorney to serve as a custodian for all confidential documents.

*Id.* at 1033 (internal citations omitted).

The exact issue before this court was addressed by the District Court of South Dakota in *Pochat v. State Farm*, Civ. No. 08-5015, Docket 44 (D.S.D. Dec. 11, 2008). In *Pochat*, plaintiffs were involved in a rear-end collision and sustained multiple injuries. Insured by State Farm, plaintiffs submitted claims for medical treatment expenses. Plaintiffs alleged that State Farm acted in bad

8

faith in rejecting most of plaintiffs' first-party uninsured claims and by failing to reasonably settle the first-party claim within policy limits. Consequently, plaintiffs sued State Farm for breach of contract and bad faith insurance practices. Plaintiffs sought discovery of information concerning State Farm's claims handling policies, practices, and procedures, in response to which State Farm moved for a protective order on the ground that such information consisted of confidential and proprietary business information and was a trade secret. State Farm intended to disclose the information[2] but requested certain safeguards from the plaintiffs.

Rejecting the protective order proposed by State Farm, the court nonetheless found good cause for the entry of a modified or limited protective order. *Id.* at 21. The court held that State Farm, through affidavit, established that the requested information constituted a trade secret under state law.[3] *Id.* at

---

[2] In *Pochat,* State Farm sought a protective order to prevent disclosure of the following information to nonparties:

> (1) all documents contained in the personnel files of the claim handlers in charge of Plaintiffs' claims as well as persons in the chain of command above these claim handlers; (2) documentation regarding how employees qualify for salaries, bonuses, incentives, benefits and commissions; (3) claims handling, policies, practices and procedures; (4) training materials; and (5) documentation relating to efforts to increase claim department profitability and decrease loss ratios or claims severity costs.

Much of this information is identical to the information sought by Burke and is the subject of AIC's current motion.

[3] The definition of a trade secret under Indiana state law is identical to that under South Dakota law. *See Hamilton v. State Farm Mut. Auto. Ins. Co.,*

9

20. State Farm had demonstrated by affidavit that information about its claims handling procedures and associated training materials were unique to its organization and were economically valuable because considerable time, effort, and expense were expended to develop these materials. *Id.* State Farm further attested that it made every effort to maintain the secrecy of these materials by only disclosing them to its employees and only producing them pursuant to a protective order or confidentiality agreement in other litigation. *Id.* State Farm also attested that it would suffer financial harm from the unrestricted disclosure of this information because competing insurance companies could duplicate State Farm's claims handling policies, manuals, and procedures. *Id.* In light of these representations, the court found that State Farm satisfied its burden of showing that the subject materials constituted trade secrets or other confidential research, development, or commercial information and that State Farm would be harmed by unrestricted disclosure. *Id.*; *see In re Remington Arms Co.*, 952 F.2d at 1032.

Similarly, in the present case, AIC, by affidavit, declares that documents and communications concerning its business plans and strategies, its policies for establishing loss reserves, claims handling and other business operations, and agreements and transactions between AIC and its related entities are unique to its organization and were created by its employees. AIC further attests

---

204 F.R.D. 420, 423 (S.D. Ind. 2001); *see also* Ind. Code § 24-2-3-2.

the information is protected from disclosure outside AIC and that its employees, as a condition of employment, annually execute documents that prohibit disclosure of the information as a condition of their employment. AIC also states that it would be financially harmed by its competition if its strategic plans, goals, and financial information were disclosed.

Because AIC is not objecting to the disclosure of the requested information subject to a protective order at this time, the court will assume without deciding that the information is relevant and necessary to litigate Burke's claims. A limited protective order is appropriate in this case as it would satisfactorily protect both parties' interests—Burke would have access to the requested information, and competitors could not exploit or duplicate AIC's internal policies and procedures. Burke has suggested no reason to doubt AIC's assertion that access to the disclosed information by competitor companies would be detrimental to AIC. Also persuasive is the fact that Burke has not shown, substantively or concretely, how his interests would be harmed by a limited protective order.

**III. Nonpublic Contracts, Compensation and Personnel Information, and Nonpublic Health Information about South Dakota Insureds**

AIC requests safeguards to be in place prior to disclosing the following information: nonpublic contracts, compensation, and personnel information, and nonpublic health information about its South Dakota customers. The district court for the District of South Dakota also directly addressed this issue

11

in *Pochat*. Finding such information to be relevant to plaintiffs' bad faith insurance and breach of contract claims, the court ordered the defendant to disclose the information. Recognizing that the requested information implicated defendant's confidential and proprietary business practices and policies, however, the court ordered plaintiffs not to disclose or exchange the information with anyone not associated with the case. *Pochat* at 13.

Similarly, this court finds that AIC's request for safeguards to be in place prior to disclosing the above information is reasonable. Because AIC is not objecting to the disclosure of the requested information subject to a protective order at this time, the court will assume without deciding that the information is relevant and necessary to litigate Burke's claims. Under the balancing test, the court finds that AIC has met its burden to establish good cause for a limited protective order. The potential harm to AIC of unrestricted disclosure of confidential information outweighs the public interest in disclosure. *See Pansy*, 23 F.3d at 787.

As attested to by AIC through affidavit, personnel files contain the confidential information of individuals who are not parties to this litigation. AIC's files also contain the financial, employment, and private information of AIC's employees, agents, and customers. Docket 108-2 at 3. These employees, agents, and customers are not parties to this lawsuit, but rather are private individuals with legitimate privacy concerns. *See Dahdal v. Thorn Americas, Inc.*, Civ. No. 97-2119, 1997 WL 599614, at *1 (D. Kan. Sept. 15, 1997) (entering

limited protective order for personnel files of employees because employees were nonparties to the suit, files commonly contain sensitive, personal information with little or no relevance to the suit, and widespread dissemination of such information could result in economic or emotional harm to the employees); *Williams v. Bd. of Cnty. Comm'rs*, Civ. No. 98-2485, 2000 WL 133433, at *1 (D. Kan. Jan. 21, 2000) (stating generally that "personnel files and records are confidential in nature and that, in most circumstances, they should be protected from wide dissemination"). Furthermore, documents pertaining to how AIC awards financial incentives and bonuses implicate AIC's business practices. And the medical or health information of AIC's customers is deemed confidential by the Health Insurance Portability & Accountability Act of 1996. *See* Pub. L. No. 104-191, § 261-64, 110 Stat. 1936 (1996); *see also* 45 C.F.R. §§ 160 *et seq.* (2011).

Finally, Burke has not shown, substantively and concretely, how his interests would be harmed by a limited protective order. Such an order would not prevent Burke from obtaining the information relevant to his claims, but rather would merely prevent said information from being disseminated to third parties.

The court declines to adopt the protective order proposed by AIC, however, because it allows the producing party to designate "any materials (whether a document, testimony, or otherwise) which the producing party reasonably and in good faith believes contains information of a confidential

commercial or personal nature." Docket 94-1 at 3. The court is concerned that this broad language will serve to give each party "carte blanche to decide what portions of the record shall be kept secret." *See Citizens First Nat'l Bank of Princeton v. Cincinnati Ins. Co.*, 178 F.3d 943, 945 (7th Cir. 1999). While the court finds that AIC has established good cause for the entry of a protective order to secure its trade secrets and other confidential information, the terms of and the conduct of discovery will be governed by the protective order as Docket 116 of this case.

## CONCLUSION

For good cause shown, it is

ORDERED that AIC's motion for a protective order (Docket 94) is granted in part and denied in part consistent with the above opinion.

Dated March 6, 2013.

BY THE COURT:

/s/ *Karen E. Schreier*
KAREN E. SCHREIER
UNITED STATES DISTRICT JUDGE