UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | | |
|---|---|---|
| TERRY BURKE as personal representative of the estate of Berniece Hermsen, and in his capacity as previous attorney in fact for Berniece Hermsen, | ) ) ) ) ) | CIV. 12-4051-KES |
| Plaintiff, | ) ) ) | MEMORANDUM OPINION AND ORDER |
| vs. | ) ) ) | |
| ABILITY INSURANCE COMPANY, f/k/a Medico Life Insurance Company; ABILITY RESOURCES, INC.; ABILITY RESOURCES HOLDINGS, INC.; ABILITY REINSURANCE HOLDINGS LIMITED, BERMUDA; and ABILITY REINSURANCE  LIMITED, BERMUDA, | ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

Plaintiff, Terry Burke, personal representative of the estate of Berniece

Hermsen and in his capacity as previous attorney in fact for Hermsen, brought

this claim against defendants alleging breach of contract, bad faith, fraud, and

misrepresentation stemming from the scope of coverage of Hermsen's long-term

care insurance policy. Docket 31. Burke moves to compel production of

documents related to this litigation from both Ability Insurance Company (AIC)

and Ability Resources Inc. (ARI) claiming that the requested discovery is

relevant, narrowly tailored, and not subject to privilege. Dockets 68 & 73. Both

AIC and ARI objected to a number of the requests for production and opposed Burke's motions to compel in a joint response. Dockets 91 & 96. The court grants the motion to compel in part and denies the motion in part.

## BACKGROUND

Mutual Protective Insurance sold a policy of long-term care insurance to Hermsen, a South Dakota resident, in January of 2000. Docket 31 ¶ 5. Generally, Hermsen's policy required that nursing or long-term care benefits be given to an insured who meets the qualifications contained in the policy. Hermsen entered an assisted living facility on January 5, 2009. Docket 31 ¶ 19. She and her family[1] submitted a claim for benefits under her policy on January 13, 2009. Docket 31 ¶ 20. On February 27, 2009, Hermsen received a denial letter stating that she did not meet the eligibility requirements of her policy. *Id.*

Hermsen filed a second claim for benefits around July 30, 2009. Because Hermsen's condition had deteriorated since she entered the assisted living facility, her second request for benefits under her policy was approved. Nearly two years later, and after Hermsen died, counsel for Hermsen's estate contacted AIC and requested that AIC pay the unpaid benefits to Hermsen's estate for the period of time that Hermsen was not covered under the policy in 2009. AIC issued checks to the estate in an amount totaling $17,050.93 for unpaid

---

[1] Terry Burke is Hermsen's nephew. Docket 31 ¶ 20.

2

benefits from January 5, 2009, to August 2, 2009. Hermsen died on July 19, 2010. Docket 91 at 5.

Meanwhile, Hermsen's and many other insureds' long-term care insurance policies were acquired by Medico Life Insurance Company. Docket 31 ¶ 6. In September of 2007, Medico Life Insurance Company was acquired by ARI, and Medico became AIC. Docket 31 ¶¶ 6-7. While AIC is the entity that contracts with insureds to purchase insurance, AIC and its owner, ARI, have a number of related entities. Ability Resources Holdings, Inc. is the holding company for ARI. AIC contracts with Ability Reinsurance (Bermuda) Limited to act as a reinsurer of its risk, and AIC pays approximately 75 percent of its premium revenues to Ability Reinsurance (Bermuda) Limited as the payment for providing reinsurance. Docket 31 ¶ 9. Finally, Ability Reinsurance Holdings Limited is the holding company of Ability Reinsurance (Bermuda) Limited. Donald Charsky is the president and CEO of Ability Resources Holdings, the holding company above AIC and ARI.

On March 23, 2012, Burke brought this cause of action on behalf of Hermsen's estate against all five Ability entities alleging breach of contract, bad faith, fraud, and misrepresentation stemming from the scope of coverage of Hermsen's long-term care insurance policy. Docket 1. The three noncontracting defendants, Ability Resources Holdings, Inc., Ability Reinsurance Holdings Limited, and Ability Reinsurance (Bermuda) Limited, moved to dismiss

themselves as parties to the action on July 23, 2012. Docket 40. The court denied the motion to dismiss. Docket 105 at 25.

On July 12, 2012, Burke issued 25 requests for production to both ARI and AIC. On August 20, 2012, AIC and ARI objected to those requests and did not provide any documents. AIC eventually agreed to comply with request for production number 1, which related to Hermsen's claim file. As to the other requests, defendants objected based on relevance, undue burden, and that the requests were overly broad or contained confidential or privileged material. Although they initially objected to many of the requests for production, AIC and ARI have since produced over 1,100 documents totaling over 5,500 pages throughout the pendency of the case.

The parties agree that they made efforts to meet and confer to resolve these discovery disputes as required by the local and civil rules. The parties could not reach a resolution. As a result, on November 21, 2012, Burke moved to compel AIC to comply with his discovery requests. Docket 68. On November 26, 2012, Burke moved to compel ARI to produce similar discovery. Docket 73. Defendants[2] filed a joint response in resistance to the motion to compel. Docket 91. The court will take up the remaining portions of the motion to compel.

---

[2] Because Burke's motions to compel only relate to AIC and ARI, when the court refers to defendants in the remainder of this order it is generally referring to AIC and ARI.

## STANDARD OF REVIEW

The scope of discovery in a civil case is governed by Federal Rule of Civil

Procedure 26, which provides:

> Unless otherwise limited by a court order, the scope of discovery is
> as follows: Parties may obtain discovery regarding any nonprivileged
> matter that is relevant to any party's claim or defense–including the
> existence, description, nature, custody, condition, and location of
> any documents or other tangible things and the identity and
> location of persons who know of any discoverable matter. For good
> cause, the court may order discovery of any matter relevant to the
> subject matter involved in the action. Relevant information need not
> be admissible at the trial if the discovery appears reasonably
> calculated to lead to the discovery of admissible evidence. All
> discovery is subject to the limitations imposed by Rule 26(b)(2)(c).

Fed. R. Civ. P. 26(b)(1). The court will limit the extent of discovery if it

determines the discovery is unreasonably duplicative, cumulative, can be

obtained from a more convenient source, or if the expense or burden of

discovery outweighs its benefit. Fed. R. Civ. P. 26(b)(2)(C).

The scope of discovery under Rule 26(b) is extremely broad. *See* 8 Charles

Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 2007, 36-37

(1970) (hereinafter "Wright & Miller"). The reason for the broad scope of

discovery is that "[m]utual knowledge of all the relevant facts gathered by both

parties is essential to proper litigation. To that end, either party may compel the

other to disgorge whatever facts he has in his possession." 8 Wright & Miller

§ 2007 at 39 (quoting *Hickman v. Taylor,* 329 U.S. 495, 507-08 (1947)). The

federal rules distinguish between discoverability and admissibility of evidence.

Fed. R. Civ. P. 26(b)(1), 32, and 33(a)(2). Therefore, the rules of evidence assume the task of keeping out incompetent, unreliable, or prejudicial evidence at trial. These considerations are not inherent barriers to discovery, however.

The advisory committee's note to the 2000 amendments to Rule 26(b)(1) offers guidance on how courts should define the scope of discovery in a particular case:

> Under the amended provisions, if there is an objection that discovery goes beyond material relevant to the parties' claims or defenses, the court would become involved to determine whether the discovery is relevant to the claims or defenses and, if not, whether good cause exists for authorizing it so long as it is relevant to the subject matter of the action. The good-cause standard warranting broader discovery is meant to be flexible.
>
> The Committee intends that the parties and the court focus on the actual claims and defenses involved in the action. The dividing line between information relevant to the claims and defenses and that relevant only to the subject matter of the action cannot be defined with precision. A variety of types of information not directly pertinent to the incident in suit could be relevant to the claims or defenses raised in a given action. For example, other incidents of the same type, or involving the same product, could be properly discoverable under the revised standard . . . . In each instance, the determination whether such information is discoverable because it is relevant to the claims or defenses depends on the circumstances of the pending action.
>
> The rule change signals to the court that it has the authority to confine discovery to the claims and defenses asserted in the pleadings, and signals to the parties that they have no entitlement to discovery to develop new claims or defenses that are not already identified in the pleadings. . . . When judicial intervention is invoked, the actual scope of discovery should be determined according to the reasonable needs of the action. The court may permit broader discovery in a particular case depending on the

6

circumstances of the case, the nature of the claims and defenses, and the scope of the discovery requested.

Fed. R. Civ. P. 26 advisory committee's note to 2000 Amendments, subdivision b.

The same advisory committee's note further clarifies that information is discoverable only if it is relevant to the claims or defenses of the case or, upon a showing of good cause, to the subject matter of the case. *Id.* "Relevancy is to be broadly construed for discovery issues and is not limited to the precise issues set out in the pleadings. Relevancy . . . encompass[es] 'any matter that could bear on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case.' " *E.E.O.C. v. Woodmen of the World Life Ins. Soc'y,* Civ. No. 03-165, 2007 WL 1217919, at *1 (D. Neb. Mar. 15, 2007) (quoting *Oppenheimer Fund, Inc. v. Sanders,* 437 U.S. 340, 351 (1978)). The party seeking discovery must make a "threshold showing of relevance before production of information, which does not reasonably bear on the issues in the case, is required." *Id.* (citing *Hofer v. Mack Trucks, Inc.,* 981 F.2d 377, 380 (8th Cir. 1993)). "Mere speculation that information might be useful will not suffice; litigants seeking to compel discovery must describe with a reasonable degree of specificity, the information they hope to obtain and its importance to their case." *Id.* (citing *Cervantes v. Time, Inc.,* 464 F.2d 986, 994 (8th Cir. 1972)).

Once the requesting party has made a threshold showing of relevance, the burden shifts to the party resisting discovery to show specific facts demonstrating that the discovery is not relevant, or how it is overly broad,

7

burdensome, or oppressive. *Penford Corp. v. Nat'l Union Fire Ins. Co.,* 265 F.R.D. 430, 433 (N.D. Iowa 2009); *St. Paul Reinsurance Co. v. Commercial Fin. Corp.,* 198 F.R.D. 508, 511 (N.D. Iowa 2000). The articulation of mere conclusory objections that something is "overly broad, burdensome, or oppressive," is insufficient to carry the resisting party's burden–that party must make a specific showing of reasons *why* the relevant discovery should not be had. *Cincinnati Ins. Co. v. Fine Home Managers, Inc.,* Civ. No. 09-234, 2010 WL 2990118, at *1 (E.D. Mo. July 27, 2010); *see also Burns v. Imagine Films Entm't, Inc.,* 164 F.R.D. 589, 593 (W.D.N.Y. 1996).

### DISCUSSION

## I.   **Reserves**

Burke made a number of requests for production that relate to the reserves set by Ability. The language in the first of those requests is as follows:

> **Request for Production Number 2**: Any and all documents that show or relate to claim reserves with respect to Berniece Hermsen's claim, or the manner of assigning claim reserves with respect to Berniece Hermsen's claim. If records do not exist with respect to the particular claim, Defendants should provide records showing how reserves are set for claims in the aggregate.

Defendants objected to these requests as irrelevant, privileged, and confidential. Later defendants said that no documents exist pertaining to reserves for Hermsen's claim and they refused to provide documents relating to aggregate reserves because it was irrelevant.

"Reserves are an insurer's estimates of potential losses due to claims on its policies." *Spirco Envt'l Inc. v. Am. Int'l Speciality Lines Ins. Co.*, Civ. No. 05-1437, 2006 WL 2521618, at *1 (E.D. Mo. Aug. 30, 2006) (citing *J.C. Assocs. v. Fid. & Guar. Ins. Co.*, Civ. No. 01-2437, 2003 WL 1889015, at *1 (D.D.C. 2003)). Evidence related to reserves is generally relevant because "[t]he failure of an insurer to offer a reasonable amount to settle a claim, on a claim of bad faith breach of duty, might be evidenced by the insurer's setting aside a substantially greater amount of reserve for that claim." *Id.* (citation omitted).

The Eighth Circuit Court of Appeals has found that evidence of reserves or case estimate information may be admissible to the issue of whether an insured made settlement offers in good faith. *Kirchoff v. American Cas. Co. of Reading, Pa.*, 997 F.2d 401, 405 (8th Cir. 1993). On the other hand, the Eighth Circuit has also stated that individual or specific case reserves may be protected by the work product privilege if they are prepared in anticipation of trial or for litigation. *Simon v. G.D. Searle & Co.*, 816 F.2d 397, 401 (8th Cir. 1987). This is because "[t]he individual case reserve figures reveal the mental impressions, thoughts, and conclusions of an attorney in evaluating a legal claim. By their very nature they are prepared in anticipation of litigation and, consequently, they are protected from discovery as opinion work product." *Id.* (citing *Hickman v. Taylor*, 329 U.S. 495, 512 (1947)). Evidence pertaining to aggregate reserve

9

information, however, is discoverable and generally not protected by the work product doctrine or the attorney-client privilege. *Id.* at 402-03.

Because defendants stated that individual reserves do not exist for Hermsen's claim, the court does not have to determine if the privilege applies to this type of document or whether it is discoverable. The court does conclude, however, that evidence related to reserves in the aggregate is relevant, discoverable, and not protected by privilege because evidence suggests that they were prepared in the ordinary course of business. *See Lyon v. Bankers Life & Cas. Co.*, Civ. No. 09-5070, 2011 WL 124629, at *11 (D.S.D. Jan. 14, 2011) (" 'The aggregate reserve information in the risk management documents serves numerous business planning functions, but we cannot see how it enhances the defense of any particular lawsuit.' The requested documents are neither privileged nor protected.") (quoting *Simon*, 816 F.2d at 401). Moreover, any argument pertaining to privilege cannot properly be addressed by the court at this time because defendants have not submitted a privilege log on this topic.

Defendants argue that this type of evidence, and other evidence related to their financial condition, cannot be conducted at this stage of the litigation because SDCL 21-1-4.1 prevents discovery of evidence related to punitive damages from commencing unless the court finds by clear and convincing evidence following a hearing that there is a reasonable basis to believe the defendant engaged in willful, wanton, or malicious conduct. This court has

10

previously held on numerous occasions, however, that SDCL 21-1-4.1 is a procedural statute that conflicts with the federal rules of evidence, which means that the statute is not applied by federal courts sitting in diversity. *See Houwman v. Gaiser*, Civ. No. 10-4125, 2011 WL 4345236, at *10 (D.S.D. Sept. 15, 2011) ("Therefore, the statute's requirement of a hearing before commencing discovery, as well as the statute's language, does not apply to this action in federal court."); *Lillibridge v. Nautilus Ins. Co.*, Civ. No. 10-4105, 2013 WL 870439, at *7 (D.S.D. Mar. 7, 2013) ("Therefore, Lillibridge does not have to meet the heightened burden found in SDCL 21-1-4.1 to begin discovery on the issue of punitive damages, and Lillibridge may proceed with discovery without court order.").

Defendants also argue that their financial condition is not relevant to this case. The court disagrees. The South Dakota Supreme Court has held that "a defendant's net worth is a guideline for assessing the amount of punitive damages." *Roth v. Farner-Bocken Co.*, 667 N.W.2d 651, 670 (S.D. 2003). The court has also stated that "defendant's financial resources are an appropriate yardstick for determining punitive damages." *Id.* Because Burke has alleged a claim of punitive damages and the exact business or financial relationships between all defendants is unclear, evidence of all defendants' financial condition, including aggregate reserves, is relevant to a material issue in this

case and is discoverable. Thus, the motion to compel as to request for production number 2 is granted.

Burke's next requests for production are related to the prior issue of reserves and specifically pertain to an electronic media search. The specific requests are:

> **Request for Production Number 3**: Any and all documents from any Electronic Storage Media computer used by or accessible to the following individuals, and which contain the term "reserve" or "reserves": (a) Donald Charsky; (b) Ray Nelson; (c) Dan Cathcart; (d) Imran Siddiqui; (e) Douglas Kaden. The scope of this request is January 2, 2009, to present, or whatever period of time the Electronic Storage Media will allow. This request includes but is not limited to word processing documents, e-mails, spreadsheet or accounting programs, PDF documents that allow optical character recognition, or any other type of digital data that is capable of electronic search.

> **Request for Production Number 20**: Any and all e-mails to or from Ray Nelson, Donald Charsky, Donald Catchcart [sic], Michael Crow, Douglas Kaden, Imran Siddiqui, or Fred Yoshua, related to establishing reserves, setting reserves, or changes in reserves. The scope of this request is January 1, 2009, to present.

Like the court's conclusion for request for production number 2, the court also finds that the requested discovery for requests for production numbers 3 and 20 are relevant and are not privileged so far as they pertain to aggregate reserves. The burden now shifts to Ability to show that these requests are overly broad, burdensome, or oppressive.

Ability cannot carry this burden because it has done nothing more than state broad, boilerplate, or cursory objections. *See Continental Ill. Nat'l Bank &*

*Trust Co. of Chicago v. Caton*, 136 F.R.D. 682, 684-85 (D. Kan. 1991) ("All discovery requests are a burden on the party who must respond thereto. Unless the task of producing or answering is unusual, undue or extraordinary, the general rules require the entity answering or producing the documents to bear that burden."). Defendants have not stated that they cannot conduct the searches, only that it would require review of numerous documents that are irrelevant to Hermsen's claim for benefits. Defendants failed to articulate how this discovery is extraordinary or unusual; thus, defendants have not carried their burden. *See Kirschenman v. Auto-Owners Ins.*, 280 F.R.D. 474, 491 (D.S.D. 2012) (noting that while the insurance company claims that it has 4500 files that are not currently sorted electronically, defendant did "not assert that *they cannot be sorted*.").

The requests are not overly broad because they are limited to specific employees within Ability who may have knowledge about reserves, they are limited in time, and they are generally self-limiting. Also, the court cannot establish whether any privilege applies because defendants did not submit a privilege log pertaining to this information. Accordingly, defendants will produce documents responsive to these requests, and the motion to compel related to requests for production numbers 3 and 20 is granted.

13

Burke requested actuary reports or communications related to reserves for long-term care policies that are issued to defendants. The requests specifically state:

> **Request for Production Number 18**: Copies of all periodic reports from any actuaries or the actuarial department of any Defendant, related to Defendants' long-term care policies. The scope of this request is September 27, 2007, to present.

> **Request for Production Number 19**: Any and all communications between actuaries employed by Defendants and outside actuaries or actuary firms, related to establish reserves, setting reserves, or changes in reserves. The scope of this request is January 1, 2009, to present.

Burke states that reports, emails, or communications to or from defendants' employees and actuaries or between specific employees related to reserves are relevant because they will help form the basis for how defendants set reserves or can help Burke understand what is included in defendants' reserves. This court has already determined that Burke's prior requests related to reserves are relevant and discoverable in this case when discussed in the aggregate because it could lead to admissible evidence related to punitive damages. Additionally, defendants have admitted that "[t]he Companies' reserves are regularly reviewed by outside parties, including (i) an outside actuary who reviews their calculations and the adequacy of reserves." Docket 91 at 13. Because these reports, emails, or communications relate to setting the aggregate for defendants' reserves, the court finds that they are relevant.

14

Accordingly, Burke's motion to compel as it relates to requests for production numbers 18 and 19 is granted.

## II.    Employment Files and Compensation

Burke requested a number of documents that are related to the personnel files and the compensation scheme for the employees who handled Hermsen's claim–including upper management. The specific requests are as follows:

> **Request for Production Number 4**: Copies of any employment related files maintained by Defendants which relate to the following persons, and any other person who handled, supervised, audited and/or reviewed Plaintiff's claim, as well as the personnel files of all persons in the chain of command above those persons: Anita Gold, Amy Taylor, Grace Nogueira, Anne Ingoldsby, Donald Charsky, and Donald Lawler. This request includes (but is not limited) to personnel files, human resources files, compensation files, or files by any other name or description that are used to hold documents or data related to that person's employment.

> **Request for Production Number 5**: All compensation agreements between any Defendant and each of its officers or directors. This includes, but is not limited to, agreements for wages, deferred compensation, bonuses, incentive agreements, stock options, loans, or any other potential form of consideration.

ARI and AIC objected to the requests as irrelevant, overly broad, and confidential. ARI later produced the personnel files for Anita Gold, Amy Taylor, Grace Nogueira, Anne Ingoldsby, Donald Charsky, and Donald Lawler. Burke still requests the personnel files or compensation agreements for defendants' directors.

First, courts in the District of South Dakota have routinely found personnel files in insurance bad faith cases to be relevant and discoverable. *See*

15

*Lyon*, 2011 WL 124629, at *8 ("[T]he district court in the Western Division of the District of South Dakota has traditionally and uniformly allowed discovery of personnel files in insurance bad faith cases."). This is because "[p]ersonnel files may reveal an inappropriate reason or reasons for defendant's action with response to plaintiff's claim or an 'inappropriate corporate culture.' " *Signature Development, LLC v. Mid-Continent Cas. Co.*, Civ. No. 11-5019, 2012 WL 4321322, at *13 (D.S.D. Sept. 18, 2012) (citing *Lyon*, 2011 WL 124629, at *8). Second, this court has found that upper management personnel files are discoverable in bad faith cases. *See Kirschenman v. Auto-Owners Ins.*, Civ. No. 09-4190, 2012 WL 1493833, at *2 (D.S.D. Apr. 27, 2012) ("But according to established law in this district, upper-level personnel files are discoverable in a case alleging bad faith."). Thus, defendants' assertion that these files are not relevant because directors or officers did not handle Hermsen's claim is without merit.

Request for production number 5 requests the production of compensation agreements between any of the named entity defendants and their directors or officers. Like a personnel file, bonus and incentive information for the directors or officers as upper-level employees of defendant companies is also relevant and discoverable when an insurance bad faith claim is alleged. *See Hurley v. State Farm Mut. Auto. Ins. Co.*, Civ. No. 10-4165, 2012 WL 1600796, at *4 (D.S.D. May 7, 2012) ("It is well established in this district that information

16

about bonuses and incentives for upper-level employees is generally discoverable in cases alleging that an insurance company acted in bad faith in denying an insured's claim in violation of South Dakota law.").

This type of information raises confidentiality concerns, but it can be protected through the entry of a protection order that will prevent the dissemination of confidential information. Although the parties have a current protection order in place, it only pertains to the business documents of AIC, rather than ARI. Docket 116. The parties shall execute a similar confidentiality agreement that pertains to the confidential or trade secret information of ARI. With that additional protection, Burke's motion to compel as to requests for production numbers 4 and 5 is granted, and defendants will produce the personnel files or compensation agreements of the parties listed, their supervisors, and directors if defendants have access[3] to these documents.

In request for production number 12, Burke seeks information about stock options issued by any defendant company. The specific request is:

> **Request for Production Number 12**: Any and all documents related to valuation of stock options issued by any Defendant, regardless of whether the basis of the valuation is carrying value,

---

[3] "The rule that has developed is that if a party 'has the legal right to obtain the document,' then the document is within that party's 'control' and, thus, subject to production under Rule 34." *Beyer v. Medico Ins. Grp.*, Civ. No. 08-5058, 2009 WL 736759, at *5 (D.S.D. Mar. 17, 2009) (quoting 8A Charles Alan Wright, Arthur R. Miller & Richard L. Marcus, *Federal Practice & Procedure* § 2210 at 397 (2d ed. 1994)).

17

book value, actual value, or any other means or basis of evaluation. The scope of this request is September 27, 2007, to present.

Defendants object to this request as being irrelevant, overly broad, unduly burdensome, and confidential. Defendants state that these documents do not pertain to Burke's claim. Defendants later stated that they do not issue stock options. Burke argues that this evidence is relevant to show defendants' managers have a personal interest in protecting the company's money and to deny claims like Hermsen's because they have the ability to buy reduced price stock. Burke also claims that the value of stock options could offer a candid explanation of defendants' financial history.

The court concludes that stock options for upper management and individuals involved in the denial of Hermsen's claims could be considered a form of compensation, which is relevant and discoverable. *See Anspach v. United of Omaha Life Ins. Co.*, Civ. No. 10-5080, 2011 WL 3862267, at *9 (D.S.D. Aug. 31, 2011) ("Personnel files may reveal whether a particular employee was rewarded financially for denying a certain number or percentage of claims or achieving a particular outcome with regard to claims handling. This is certainly relevant to [plaintiff]'s bad faith and punitive damages claims."). If documents exist that relate to the valuation of stock options issued by any defendant and AIC or ARI have access to this information, then it will be provided to Burke.

The court has already entered a protection order that protects AIC's confidential documents and has now ordered that the parties enter into a

18

protection order that similarly shields ARI. Thus, defendants' concerns about the dissemination of proprietary or confidential information is resolved. Accordingly, Burke's motion to compel related to request for production number 12 is granted.

### III.   Corporate Structure

Burke requests a number of documents that relate to defendants' business or corporate structure. The first request is:

> **Request for Production Number 13**: For each Defendant, copies of any and all articles of incorporation, corporate charters, by-laws (or bye-laws), memorandum of association, and limited liability company operating agreements, including any amendments or exhibits thereto, or any other similar documents showing formation of a legal entity, including, but not limited to, similar documents designed by other names under laws or rules applicable to Bermuda entities.

Defendants stated that the request is not relevant, is overly broad, and is confidential. Defendants eventually produced their own articles and by-laws, but did not produce documents for any other defendants because it did not "have in its possession, custody, or control, any documents responsive to this request for any of the other Defendants in this matter." The court finds that these documents are relevant to this case as typical background discovery and to help establish the relationship between all defendants. If defendants have access to these documents, then they will produce them to Burke.

Burke also requests information related to agreements or contracts between defendants. Specifically, the request is:

19

**Request for Production Number 11**: Any and all documents evidencing agreements or contracts of any kind, including amendments, exhibits, documents incorporated by reference, or documents referred to in the agreement, between or among any of the Defendants since January 1, 2007.

Defendants objected to this request on the grounds that it is irrelevant, overly broad, and confidential. Defendants stated that they have since completed production of all agreements between AIC and ARI or any other remaining defendant except for one agreement between ARI and Ability Reinsurance (Bermuda) Limited.

The court finds that contracts or agreements between the defendants is relevant to this case. In particular, reinsurance agreements and other agreements between the parties are relevant to the makeup of an insurance company and could lead to the discovery of admissible evidence. *See Lyon*, 2011 WL 124629, at *18 ("The relationship between [the insurer] and its reinsurers is relevant to determining if there is a pattern of conduct or an isolated incident of denial of plaintiff's long-term care insurance coverage. Discovery of this relationship is permissible under Rule 26(a)(1)(A)(iv) and may well lead to admissible evidence under Rule 26(b)(1)."). Any concerns about confidentiality can be addressed through the parties' protection orders. Because defendants have admitted there may still be one contract they have not produced, Burke's motion to compel as to this request is granted.

20

Burke also requests documents that were for the use of or referenced by defendants' directors at board meetings or for use by certain committees in preparation for committee meetings. Those specific requests state:

> **Request for Production Number 14**: For each Defendant, any and all documents provided to directors for use or reference at board meetings. This would include, but not be limited to, minutes of previous meetings, agendas, reports, studies, accountings, spreadsheets, power point slides or presentations, or other documents. The scope of this request is January 1, 2007, to present.

> **Request for Production Number 15**: Any and all documents provided to or circulated amongst members of any audit committee, investment committee, risk management committee, or compensation committee, for their preparation, use or reference, during meetings of that committee. This would include, but not be limited to, minutes of previous meetings, agendas, reports, studies, accountings, spreadsheets, power point slides or presentations, or other documents. The scope of this request is January 1, 2007, to the present.

Defendants objected to these requests as irrelevant, overly broad, and confidential because these documents are not relevant to plaintiff's claims. AIC and ARI eventually agreed to produce their own documents subject to a protective order, but said that they did not have any documents in their possession, custody, or control related to any of the other defendants. Defendants now state that they have already produced all non-privileged documents that are responsive to their own companies. ARI stated that it would also produce board minutes and materials for some meetings of the Bermuda companies' boards.

21

If ARI or AIC have documents responsive to requests for production numbers 14 or 15 or have access to such documents other than those already provided, then they will produce those documents to Burke. Items given to defendants' board of directors like meeting minutes, agenda items, and other related documents are relevant to a number of issues the court has already discussed, such as: claims handling, risk management, compensation or incentives for employees, or defendants' financial condition. Similarly, the court finds that any document used by the audit committee, investment committee, risk management committee, and compensation committee of any defendant could lead to the discovery of admissible evidence relating to the relevant topics discussed above. Burke's motion to compel as to requests for production numbers 14 and 15 is granted.

Burke also seeks the production of email communication between specific individuals that pertain to defendants' business operations. His request is:

> **Request for Production Number 16**: Any and all e-mail communications and attachments to or from any of the following individuals which is related to the business operations of any of the Defendants: (a) Donald Charsky; (b) Donald Cathcart; (c) Michael Crow; (d) Douglas Kaden; (e) Imran Siddiqui; and (f) Fred Yosua. The scope of this request is January 1, 2010, to present.

Defendants initially objected to this request as being irrelevant, overly broad, unduly burdensome, vague and ambiguous, confidential and privileged. Defendants stated that the request is vague because it uses the term "business operations" and does not define it so that defendants can understand what is

22

requested. Burke agreed to narrow the request to four individuals for an eight-month window. Defendants suggested 26 search terms to further narrow the request. Burke did not agree to the use of these search terms.

Burke argues that this information is relevant because the purpose is to explore control of the Ability entities and is aimed at the individuals likely to be involved in control. The court finds that the request, as it is currently worded, is too broad, unduly burdensome, or vague. The request would essentially ask for all emails from the parties at issue, and the majority of those emails would not be relevant to any of the claims raised in this case. The court finds that the search terms offered by defendants would properly narrow and tailor this request. Burke may propose additional terms to further focus the request to find documents that could reasonably lead to discovery of admissible evidence. In the meantime, defendants will produce the documents that AIC stated it already identified as responsive to the original request and as applied to the specific individuals, the temporal scope of the original request, and using the search terms proposed. Accordingly, this request is granted in part and denied in part.

Burke asked for emails that relate to an investment strategy of defendants. Specifically, Burke requests:

> **Request for Production Number 17**: All e-mails and attachments to or from the following individuals which contain the terms "hold to maturity," or "HTM": Donald Charsky, Eileen Sweeney, Donald Cathcart, Douglas Kaden, Imran Siddiqui. The scope of this request is September 27, 2007, to present, or as far back as the hardware will allow.

23

Defendants objected to this request as irrelevant, overly broad, unduly burdensome, confidential, and privileged. Burke argues that the information is relevant because these terms describe defendants' investment strategy and would lead to admissible evidence of defendants' financial condition. Moreover, Burke claims that communications about HTM assets are likely to show which people within the hierarchy of defendants' companies make the investment decisions and what degree of control the parent companies exercise over the subsidiary companies. For these reasons, the court finds this information to be relevant to defendants' financial condition and business hierarchy.

The court also finds that any confidentiality concerns have been alleviated through the entry of the parties' protection orders. Any privilege concerns cannot be addressed absent the submission of a privilege log. Thus, if documents responsive to this request exist and defendants have access to them, they will provide the documents to Burke. Burke's motion to compel as to this request is granted.

## IV. Discovery from Prior Litigation

Burke has requested all documents that were previously disclosed in prior South Dakota litigation and the *Hull* litigation in Montana. Those specific requests are:

> **Request for Production Number 24**: Please produce all documents previously produced in prior South Dakota litigations. (See definitions). Note: in lieu of physically producing those materials, you may stipulate that Plaintiff's counsel can utilize the

materials previously produced, and that the documents will be subject to the same terms of confidentiality previously established in prior actions.

**Request for Production Number 25**: Please produce all documents previously produced in the prior Montana litigation re: *Arlene Hull* . . . in lieu of physically producing those materials, you may stipulate that Plaintiff's counsel can utilize the materials previously produced, and that the documents will be subject to the same terms of confidentiality previously established in prior actions.

Defendants object to both of these requests as irrelevant, overly broad, unduly burdensome, and confidential. Defendants assert that Burke cannot establish that all of the prior discovery is relevant to this claim, and he must make specific requests for production to establish relevancy. Burke argues that these requests were used to avoid duplicating the production of materials already in the possession of Burke's counsel and to avoid time and expense necessary to reproduce the same documents.

But the court has no knowledge of what was produced in prior litigation in South Dakota and Montana. The court will not compel defendants to produce all documents from prior litigation when Burke has not established how they will be relevant or what that prior discovery contains. If Burke wishes that defendants produce more documents related to prior litigation, he will have to issue tailored requests that establish a legal or factual nexus to this claim. The motion to compel is denied as to requests for production numbers 24 and 25.

## V.    Policy Information

Burke requested information related to benefit qualifiers or other terms contained in defendants' policies through an electronic search of specific employees' media devices. The specific request is:

> **Request for Production Number 6**: Any and all documents from any Electronic Storage Media used by or accessible to Donald Charsky, Donald Lawler, Fred Yosua, Anne Ingoldsby, Grace Nogueira, or Amy Taylor, which contain any of the following search terms: ambiguous, ambiguity, medical necessity, medically necessary, ADL, ADLs, ADL's, Activities of daily living, cognitive impairment, continual supervision, continuous supervision, withdraw, withdrawn. The scope of this request is limited to January 1, 2011, to present, or to that period which the Electronic Storage Media will allow.

Defendants objected to the request as irrelevant, overly broad, unduly burdensome, confidential, and privileged. Defendants state that AIC ran the proposed search terms, reviewed the documents, and began production of responsive, non-privileged documents. Defendants note that they agreed to run the search terms but do not agree to produce a document just because it contains a search term but may not be relevant to this case.

Defendants do not get to pick and choose which documents they think are relevant to Burke's claim. "The use of specific words or key phrases in electronic searches of computerized claim files has been approved historically in this district." *Lyon*, 2011 WL 124629, at *11 (citing *McElgunn v. CUNA Mutual Grp.*, Civ. No. 06-5061, Docket 84 at 2-3 (D.S.D. 2007); *Brown Bear v. CUNA Mut. Grp.*, 266 F.R.D. 310, 323 (D.S.D. 2009)). Burke has agreed to limit the request

to the electronic media that any of the individuals in the request accessed at any time since January 1, 2011. The court finds that this request is self-limiting because it is premised on the date from which defendants' computer software system will allow and will conduct a search based on reference to these words and the corresponding documents containing these words.

Documents produced through defendants' software programming will illustrate how defendants apply policy eligibility requirements and how they process those claims, which is directly related to Burke's claims of breach of contract, fraud, misrepresentation, and bad faith. Defendants will produce the documents responsive to this request and let Burke sort the discovery. It is not unduly burdensome or overly broad for Burke to request that the media actually used or accessed by the custodians be searched for the listed search terms.

Defendants argue, however, that they cannot determine whether a custodian accessed a database during a specific period, so they will have to run the proposed terms across the custodians' hard drives, email folders, and home directories. Defendants also claim that although employees have access to shared folders, that does not mean a custodian wrote it, read it, or knows about it; thus, the search should be limited to hard drives, email folders, and home directories because those locations are far more likely to be probative of a custodian's knowledge. Defendants will run the proposed search terms across

the locations suggested and any other electronic media to which these custodians have access.

Confidentiality concerns can be addressed by the entrance of the parties' protection orders. Privilege cannot be addressed at this time because defendants did not submit a privilege log related to this information. Burke's motion to compel as to request for production number 6 is granted.

Burke also requested documents that relate to the claim files of other Ability policyholders whose claims were denied or benefits terminated because they did not meet the benefit qualifiers. The specific request provides:

> **Request for Production Number 9**: Any and all claim files related to claims by policyholders in the Medico Block, where the claim was either denied, or benefits terminated based on failure to meet benefit qualifiers. The scope of this request is limited to claims denied, terminated or withdrawn from January 1, 2011, to present.

Defendants objected that the request is irrelevant, overly broad, unduly burdensome, confidential, and privileged. Defendants also state that a confidentiality agreement or protection order is insufficient to meet the obligations of an insurer under HIPAA. Defendants then stated they would consider the request after an explanation of relevance and the entry of an appropriate protection order.

In another long-term care insurance bad faith case against Ability's predecessor, the district court in South Dakota found that the defendant had to produce "all documents related to other claims made, where the claims were

28

denied or terminated for lack of medical necessity, or for failure to meet benefit qualifiers." *Beyer v. Medico Ins. Grp.*, 266 F.R.D. 333, 336 (D.S.D. 2009). Prior denied claims may be relevant to an issue actually in dispute in the case. *See Lyon*, 2011 WL 124629, at *13 (stating that material from other claims "is relevant to the defendants' intentions as to . . . coverage, as it will shed light on how the defendants have approached other [coverage] issues and used exclusionary clauses.") (quotations and citations omitted). Thus, the requested information here is relevant.

Defendants have not established how this request would be unduly burdensome and have not provided a privilege log, so any claim of privilege is without merit. And the court has already ordered that a protection order for both AIC and ARI be entered in this case that can sufficiently protect policyholder information and alleviate defendants' concerns about confidentiality.

Defendants have agreed to provide documents that relate to South Dakota claims, that are for policyholders with 694 or 698 non-tax qualified policies, and documents with the policyholder's last name redacted. First, the court will not restrict this request to South Dakota claims or the type of policy involved. Burke is seeking evidence of a pattern or practice of reprehensible behavior by defendants, and discovery of claims involving denial of benefits based on failure to meet benefit qualifiers from outside of South Dakota or from different types of

policies may still lead to the discovery of admissible evidence in this case. *See*

*Lillibridge v. Nautilus Ins. Co.*, Civ. No. 10-4105, 2013 WL 1896825, at *6 (D.S.D.

May 3, 2013) (noting that prior bad faith cases unrelated to property coverage

from outside of South Dakota "may be relevant to show Nautilus's knowledge

and conduct and whether a pattern and practice of inadequate investigation,

offering unreasonably low settlement offers, or other reprehensible conduct is

being repeated among policyholders.").

 Second, it is not necessary for defendants to redact the last names of the

policyholders. The court has already concluded that the protection orders can

shield policyholder information from dissemination, and these names will be

included to speed up discovery and to allow Burke to associate claim file

documents with one another or to conduct independent investigation. *See*

*Kirschenman*, 280 F.R.D. at 490 (stating that the insurance company would

disclose the names and contact information of the other policy holders who

experienced a similar loss to plaintiff's loss because the existing protection order

prevented publication or dissemination of confidential documents). Defendants

will, however, redact the specific information that Federal Rule of Civil

Procedure 5.2 requires, such as: full social security numbers, taxpayer-

identification numbers, or birth dates. *See* Fed. R. Civ. P. 5.2; *Lyon*, 2011 WL

124629, at *19 ("[A]ll personal identifiers associated with this documentation

must be protected and redacted before defendant complies with this request.").
Accordingly, the motion to compel for request number 9 is granted.

## VI.   Regulatory Matters

Burke has requested documents that detail prior complaints or regulatory
actions brought against defendants regarding long-term care policies. The first
request is:

> **Request for Production Number 7**: Any and all documents
> relating to complaints made to state regulators involving
> Defendants' handling of long-term care insurance coverage since
> January 2, 2011.

Defendants objected to this request as irrelevant, overly broad, unduly
burdensome, and privileged. This is a case where Burke alleges that defendants
engaged in breach of contract, bad faith, fraud, misrepresentation, and also
made a request for punitive damages. For a bad faith claim in South Dakota, the
question "is whether the insurer's investigation or decision to deny a claim was
unreasonable and was made in knowing or reckless disregard of the facts at the
time the insurer made its decision to litigate rather than to settle." *Dakota,
Minnesota & Eastern R.R. Corp. v. Acuity*, 771 N.W.2d 623, 632 (S.D. 2009). To
receive punitive damages Burke must establish that defendants acted with
actual or presumed malice. *Bertelsen v. Allstate Ins. Co.*, 796 N.W.2d 685, 698-
99 (S.D. 2011) (citing SDCL 21-3-2).

Among the factors that a court considers when it is determining the
appropriate amount of punitive damages, if any, is the degree of reprehensibility

of the defendant's conduct. *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S.
408, 419 (2003); *Roth*, 667 N.W.2d at 666. To make this determination the court
considers whether "the harm caused was physical as opposed to economic; the
tortious conduct evinced an indifference to or a reckless disregard of the health
or safety of others; the target of the conduct had financial vulnerability; the
conduct involved repeated actions or was an isolated incident; and the harm
was the result of intentional malice, trickery, deceit, or mere accident." *Roth*,
667 N.W.2d at 666.

The court considers whether an insurance company repeats its misdeeds
as part of a larger pattern or whether its conduct in the plaintiff's case was a
mere mistake. *Id.* Thus, the fact that there may have been other regulatory
complaints against defendants that are factually or legally similar to Burke's
claim is relevant, and the documents related to these regulatory complaints are
discoverable. *See Beyer*, 266 F.R.D. at 339 ("The court finds that the requested
documents [related to regulatory complaints] are relevant, in that the
documents may reveal evidence that Medico used or uses false bases to deny
claims, and that evidence would not be limited to South Dakota claims only.").
Accordingly, defendants will produce prior complaints against defendants
regarding long-term care insurance coverage and documents responsive to this
request that relate to the complaints.

Defendants produced a number of complaints but redacted personal information of the insureds contained within. Burke argues that defendants cannot redact these documents and such redactions have made it difficult to sort the discovery or to conduct independent investigation.

It is not necessary for defendants to redact the last names of the policyholders. The court has already concluded that the protection orders can shield policyholder information from dissemination, and these names will be included to speed up discovery and to allow Burke to associate claim file documents with one another or to conduct independent investigation. *See Kirschenman*, 280 F.R.D. at 490 (stating that the insurance company would disclose the names and contact information of the other policy holders who experienced a similar loss to plaintiff's loss because the existing protection order prevented publication or dissemination of confidential documents). Defendants will, however, redact the specific information that Federal Rule of Civil Procedure 5.2 requires, such as: full social security numbers, taxpayer-identification numbers, or birth dates. *See* Fed. R. Civ. P. 5.2; *Lyon*, 2011 WL 124629, at *19 ("[A]ll personal identifiers associated with this documentation must be protected and redacted before defendant complies with this request.").

Burke also asked for documents related to regulatory complaints, including any responses to the regulatory complaints by defendants. If defendants have discovery responsive to this request, then they will provide

them to Burke. Any claim of privilege cannot be assessed because defendants did not submit a privilege log. Burke's motion to compel related to request for production number 7 is granted.

Burke also seeks discovery that is otherwise related to regulatory actions against defendants. Specifically, Burke requests:

> **Request for Production Number 8**: Any and all documents related to actual or proposed regulatory actions related to any Defendant since January 1, 2010. This includes, but is not limited to investigations, Market Conduct Examinations, Cease and Desist Orders, Consent Orders, Corrective Orders, Corrective Action Plans, or any other regulatory action of any kind. It also includes informal actions by regulatory agencies, such as, for example, when an agency alleges unfair or deceptive claim practices and proposes that Defendant pay fines without initiating formal proceedings.

This request is similar to request for production number 7 except it focuses more on the consequences of the regulatory complaints or other allegations against defendants. This request, on its face, is relevant and discoverable for the same reasons discussed for request for production number 7. Further, evidence relating to prior regulatory actions would be in defendants' possession, would focus on defendants' conduct in particular, and would be part of their institutional knowledge related to their own policies. *See Lyon*, 2011 WL 124629, at *25 (granting a nearly identical request for production).

Defendants produced all final market conduction examinations and any other regulatory actions that were in their possession, custody, or control. The parties still disagree on whether proposed market conduct examinations that

34

are not yet final are discoverable. Defendants argue that those examinations

cannot be disclosed due to SDCL 58-3-14, which provides:

> Upon the adoption of the examination report under subdivision 58-3-12(1), the director shall continue to hold the content of the examination report as confidential information for a period of thirty days except to the extent provided in §§ 58-3-20, 58-3-21, and 58-3-22. Thereafter, the director may open the report for public inspection so long as no court of competent jurisdiction has stayed its publication.

Burke argues, however, that the documents are not confidential pursuant

to SDCL 58-3-20, which provides as follows:

> The director may use and make public any final or preliminary examination report, any examiner or company work papers or other documents, or any other information discovered or developed during the course of any examination in the furtherance of any legal or regulatory action.

Here, the Director of the Division of Insurance made these examination

documents public in furtherance of a legal action because they were disclosed

before they were finalized in response to requests in this case. The documents

were released to the public without being subject to a confidentiality order.

There is no requirement under the statute that the legal action be one to which

the director is a party. The court finds that under the plain language of the

statute, the documents are not privileged or confidential.

Defendants rely on SDCL 58-3-22 as additional support for their

contention that the documents are confidential. That statute provides in

pertinent part:

> All working papers, recorded information, documents, and copies thereof produced by, obtained by, or disclosed to the director or any other person in the course of an examination made under this chapter are confidential and may not be made public by the director or any other person, except to the extent provided in §§ 58-3-14, 58-3-20, and 58-3-21 and in any administrative or court proceeding between the company and the division.

Because these documents fall under the purview of SDCL 58-3-20, and that statute is specifically excepted from the confidentiality provisions of SDCL 58-3-22, the court finds these documents are not confidential and are discoverable.

Thus, if defendants have documents responsive to this request, including proposed market conduct reports or other documents related to regulatory actions, they will provide those to Burke. Any additional concerns about the dissemination of confidential information can be addressed through entry of the parties' protection orders. Moreover, defendants' assertion of privilege is not warranted absent a privilege log. Accordingly, Burke's motion to compel as to requests for production numbers 8 and 9 is granted.

## CONCLUSION

The court finds that a number of the requests for production in the motion to compel are relevant and could lead to the discovery of admissible evidence. These requests are not protected by privilege or any other rationale. Thus, the motion to compel as to the following requests for production is granted: 2, 3, 4, 5, 6, 7, 8, 9, 11, 12, 13, 14, 15, 16, 17, 18, 19, 20. Burke's

motion to compel as to requests for production numbers 24 and 25 is denied because Burke failed to establish relevancy. Accordingly, it is

ORDERED that Burke's motion to compel production of documents from AIC (Docket 68) is granted in part and denied in part.

IT IS FURTHER ORDERED that Burke's motion to compel production of documents from ARI (Docket 73) is granted in part and denied in part.

Dated May 31, 2013.

BY THE COURT:


/s/ *Karen E. Schreier*
KAREN E. SCHREIER
UNITED STATES DISTRICT JUDGE